ALLSTATE INSURANCE COMPANY v DEPARTMENT OF
INSURANCE

Docket No. 121390. Submitted November 20, 1991, at Lansing. Decided August 17, 1992, at 9:15 A.M.

Allstate Insurance Company petitioned the Ingham Circuit Court for review of an order of the Commissioner of Insurance that held that Allstate's 1984 revised rating plan for automobile insurance violated the provision of chapter 21 of the Insurance Code prohibiting excessive adjacent-territory and overall differentials in insurance rates. The order also required Allstate to refund to its policyholders the excess collected under the revised plan on the ground that the violation of the provisions of chapter 21 constituted a violation of the provision of chapter 20 that permitted such a remedy. The court, Peter D. Houk, J., affirmed the commissioner's order with respect to the finding of a violation of the provisions of chapter 21, but reversed that portion of the order requiring refunds to the policyholders. The Department of Insurance and the Commissioner of Insurance appealed.

The Court of Appeals *held:*

The circuit court properly held that a violation of the provision of chapter 21 of the Insurance Code limiting adjacent-territory and overall differentials in automobile insurance rates was not sufficient by itself to support a finding of a violation of the provision of chapter 21 prohibiting different rates for the same automobile insurance coverage on the basis of residence or location. The Legislature clearly did not intend the provision of chapter 20 to be coextensive with the provisions of chapter 21 and did not intend the refund and penalty remedies of chapter 20 to be applicable automatically upon a showing of a violation of the provisions of chapter 21. The chapter 20 remedies are cumulative and available only upon an independent showing of a violation of chapter 20, which was not done in this case. The circuit court correctly concluded that the portion of the commissioner's decision that ordered a refund was based on a substantial and material error of law and could not be enforced.

Affirmed.

*Dykema Gossett* (by *Donald S. Young* and *Lori M. Silsbury*), for the petitioner.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Harry G. Iwasko* and *E. John Blanchard,* Assistant Attorneys General, for the respondents.

Before: BRENNAN, P.J., and SHEPHERD and GRIFFIN, JJ.

SHEPHERD, J. This appeal concerns a revised rating plan for private passenger automobile insurance filed by petitioner, Allstate Insurance Company, with the Michigan Insurance Bureau. Respondents, the Department of Insurance and the Commissioner of Insurance, appeal as of right from the circuit court's September 14, 1989, opinion and order. The circuit court's order affirmed the commissioner's April 21, 1988, final decision and order finding Allstate's October 23, 1984, revised rating plan for private passenger automobile insurance to be in violation of the now-amended subsections 2 and 5 of § 2111 of the Insurance Code, MCL 500.2111(2) and (5); MSA 24.12111(2) and (5); see 1980 PA 461, § 2111(2) and (5). The effect of that portion of the order was to determine that rates charged to certain policyholders were too high in relation to the rates charged other policyholders. The circuit court's order also reversed that part of the commissioner's final decision and order that found Allstate's rating plan to be in violation of MCL 500.2027; MSA 24.12027. The effect of the circuit court's holding was to prohibit the respondents from either imposing penalties on the petitioner or requiring that refunds be made to policyholders as a result of the excessive rates. The only remedy would be a pro-

spective change in rates. The latter ruling is now the only matter at issue in this appeal.

In 1979, the Legislature passed the Essential Insurance Act, 1979 PA 145. The purpose of the act was ⸱described in the analysis of subsequent legislation, Senate Legislative Analysis, SB 647, March 3, 1986:

> [The Essential Insurance Act] responded to claims that the voluntary insurance market was operating unfairly and that some persons were being denied, or being charged unfairly high rates for, insurance for their homes and cars not because of factors over which they had some control, such as their driving records, but because of other factors over which they had relatively little control, such as where they lived.

In order to address this concern, § 2111(5) of the Insurance Code until February 28, 1986, provided:

> Notwithstanding other provisions of this chapter, automobile insurance risks shall be grouped by territory, and territorial base rates for coverages shall be established as follows:
>
> (a) An insurer shall not be limited as to the number of territories employed in its rating plan. However, an insurer shall not employ more than 20 different territorial base rates for an automobile insurance coverage. A territorial base rate may be made applicable in 1 or more territories contained in the rating plan of the insurer.
>
> (b) An insurer shall not employ a territorial base rate for an automobile insurance package policy that is less than 45% of the highest territorial base rate for the same policy, all other rating classifications being the same.
>
> (c) An insurer shall not employ a territorial base rate in a territory for an automobile insurance package policy that is less than 90% of the territorial base rate employed in any adjacent territory

for the same policy, all other rating classifications being the same.

The provisions of former § 2111(5)(b) were sometimes referred to as the "high/low constraints." The provisions of former § 2111(5)(c) were sometimes called the "territorial adjacency constraints."

The Insurance Bureau contended that, under Allstate's filing, rates for the $50 deductible varied by twenty-two percent between territories thirteen and fourteen, exceeding by seven percent the maximum differential permitted under a previous order of the commissioner that allowed Allstate's rate differential in adjacent territories to vary by fifteen percent instead of the ten percent ordinarily allowed under former § 2111(5)(c). The rates for the $50 deductible comprehensive in territory eighty-seven, the lowest rated territory, were 41.3 percent of the rates in territory one, the highest rated territory, which was inconsistent with the high/low territorial rate constraint. In other words, the insurance bureau argues that, although the base rates were lawful, the rate differentials that were applied to policies with deductibles as low as $50 were so disparate that the total cost to the consumer, i.e., the premium for any such policy, would be in violation of law. Allstate continues to claim that it never overcharged any policyholder. We need not resolve this dispute, because it is no longer a dispositive issue in this appeal.

The commissioner's final decision and order adopted the hearing officer's proposed decision insofar as it concluded that Allstate violated chapter 21 of the Insurance Code. Specifically, the hearing officer and the commissioner found that the comprehensive deductible factors in the rating

plan in effect from October 23, 1984, to July 23, 1986, violated the high/low and territorial adjacency constraints of § 2111(5)(b) and (c), which remained in effect until February 28, 1986. On that date, 1986 PA 10 took effect and suspended the high/low and territorial adjacency constraints. 1986 PA 10 also amended § 2111(2)(a)(viii) to provide as follows:

> Classifications established pursuant to this section for automobile insurance shall be based only upon 1 or more of the following factors, which shall be applied by an insurer on a uniform basis throughout the state:
> (a) With respect to all automobile insurance coverages:
>
> \* \* \*
>
> (viii) Amount of Insurance.

The commissioner and the hearing officer also concluded that Allstate's comprehensive deductible factors violated § 2111(2)(a)(viii).

The commissioner did not follow the hearing officer's proposed decision as it related to the assertions by the Insurance Bureau's staff that Allstate's rating practices violated the Uniform Trade Practices Act, chapter 20 of the Insurance Code, MCL 500. 2001 *et seq.*; MSA 24.12001 *et seq.* The hearing officer rejected the Insurance Bureau's contention that § 2027 was also violated. However, the commissioner disagreed with this part of the proposed decision and found that because Allstate had violated chapter 21, it had also violated § 2027(c), which prohibits charging a different rate for the same coverage on the basis of residence or location of the risk "unless the rate differential is based on sound actuarial principles, a reasonable classification system, and is related to

the actual and credible loss statistics or reasonably anticipated experience in the case of new coverages." The commissioner reasoned, in part, as follows:

It would be manifestly unsound and unreasonable to establish rates in defiance of legal requirements. It is, therefore, entirely appropriate and necessary to conclude that Allstate, in using deductible factors that are in violation of Sections 2111(2) and 2111(5), has not utilized sound actuarial principles and has established an unreasonable classification system.

On appeal, the circuit court affirmed the commissioner's findings that Allstate violated chapter 21. However, the court reversed the commissioner's finding that Allstate violated § 2027. In addition, the court concluded that imposition of the refund sanction of chapter 20, MCL 500.2038; MSA 24.12038, was "precluded by the terms of the enforcement section of chapter 21," MCL 500.2114; MSA 24.12114.

The commissioner appealed to this Court, arguing that the circuit court erred in reversing his order finding that Allstate violated § 2027 and ordering Allstate to "refund all overcharges to its Detroit area policyholders carrying comprehensive insurance with a deductible." Allstate cross appealed, arguing that the trial court erred in affirming the commissioner's finding that Allstate violated chapter 21. Pursuant to a stipulation of the parties, we entered an order on January 3, 1992, dismissing Allstate's cross appeal. This means that the finding that Allstate's rates were in violation of law remains in effect and that the only issue remaining in this appeal is whether the violation of chapter 21 also constitutes a violation of chap-

ter 20, which has the penalty and refund provisions.

Allstate no longer uses the rating plan at issue. By dismissing its cross appeal, Allstate concedes, at least for purposes of the argument herein, that the plan violated § 2111. Thus, the dispositive issue presented in this appeal is not whether Allstate violated § 2027, but whether the refund remedy is appropriate. We hold that it is not, and we affirm the circuit court's conclusion that the commissioner's imposition of the refund sanction contravened the provisions of chapter 21 and constituted a substantial and material error of law. MCL 24.306(1)(a) and (f); MSA 3.560(206)(1)(a) and (f).

It is undisputed that the claimed violation of § 2027 is based solely on Allstate's violation of § 2111. In other words, the reason the commissioner found that Allstate's rates were not based on "sound actuarial principles" or "a reasonable classification system," as required by § 2027, is because the rates violated the law, specifically, § 2111. The commissioner argues that this case presents no conflict between the provisions of chapter 20 and chapter 21. We disagree.

Upon finding that a regulated person has committed practices prohibited by chapter 20, including a violation of § 2027, the commissioner may order payment of a monetary penalty, suspension or revocation of the person's license or certificate of authority, or refund of any overcharges. MCL 500.2038(1)(a)-(c); MSA 24.12038(1)(a)-(c).

The remedial provisions of chapter 21 are quite different. Section 2114(2) provides:

> If after hearing initiated under subsection (1) or upon the commissioner's own motion pursuant to Act No. 306 of the Public Acts of 1969, as

amended, the commissioner finds that a filing does not meet the requirements of sections 2109 and 2111, the commissioner shall issue an order stating the specific reasons for that finding. *The order shall state when, within a reasonable time after issuance of the order, the filing shall be considered no longer effective.* A copy of the order shall be sent to the applicant, if any, and to each insurer and rating organization subject to the order. *The order shall not affect a contract or policy made or issued before the date the filing becomes ineffective, as indicated in the commissioner's order.* [Emphasis added.]

Thus, the plain language of § 2114(2) evinces the clear intent of the Legislature to remedy violations of § 2111 by an order of the commissioner that shall state "when . . . the filing shall be considered no longer effective," whereas it is equally clear that a violation of chapter 20 may include the sanction of a refund ordered by the commissioner. Section 2038(1)(c). The commissioner argues that these remedies are cumulative and that because Allstate violated both § 2027 and § 2111, it should be subject to the sanctions contained in both chapter 20 and chapter 21. Assuming without deciding that Allstate has violated § 2027, we cannot agree with the commissioner's argument.

Upon finding that a rate filing does not meet the requirements of chapter 21, the commissioner must issue an order stating when the filing "shall be considered no longer effective." Section 2114(2). The last sentence of § 2114(2) plainly provides that "[t]he order shall not affect a contract or policy made or issued before the date the filing becomes ineffective, as indicated in the commissioner's order." This would appear to be a fairly plain legislative attempt to provide that the exclusive remedy for a violation of chapter 21 is the commissioner's

order terminating the effectiveness of the rate filing. This prospective relief is all that those aggrieved by a filing that violates the provisions of chapter 21 are entitled; no monetary penalties or refunds may be had because such relief would affect contracts or policies made or issued before the commissioner's order.

To buttress its argument that this is the intent behind the plain language of § 2114, Allstate points to proposed statutory language rejected by the Legislature. House Substitute for Senate Bill No 428 (the Senate bill was eventually enacted as 1979 PA 145) apparently would have deleted § 2114 and provided for an entirely different remedial scheme in a proposed § 2113, which would have provided in pertinent part:

> (1) A person aggrieved by an alleged violation of this chapter, chapter 20, chapter 24, or chapter 26, may contest the alleged violation by filing a request with the commissioner in a form and manner as is required by the commissioner.
>
> * * *
>
> (4) *If,* after providing the opportunity for the hearing, *the commissioner finds that a violation has occurred, the commissioner may impose any penalty authorized by law and may provide other appropriate relief, including refunds* of premium and the issuance or renewal of automobile or home insurance coverages. [Emphasis added.]

The Legislature made its intent clear with the rejection of this substitute. *People v Adamowski,* 340 Mich 422, 429; 65 NW2d 753 (1954). Without a clear and cogent reason, a court should not give a statute a construction that the Legislature plainly refused to give. *Id., Elliot v Genesee Co,* 166 Mich App 11, 17; 419 NW2d 762 (1988).

Finally, we note that in a report prepared by the

Insurance Bureau's staff the remedial provisions of chapter 21 were discussed:

> Perhaps the most serious problem the Bureau has encountered under the new law is that *Chapter 21 does not include penalties for violation of the chapter's provisions.* This has made it difficult to effectively enforce certain provisions of the law. [*A Year of Change: The Essential Insurance Act in 1981,* Insurance Bureau, June 4, 1982, p 57. Emphasis added.]

In light of the foregoing it is absolutely clear that the Legislature deliberately refused to vest the commissioner with power to order a refund for noncompliance with chapter 21. We may not pass on the wisdom or fairness of this measure. Our task is to apply the law as it is written, if unambiguous; if judicial construction is necessary because of ambiguity in the statute, our task is to ascertain and give effect to the intent of the Legislature. See *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992).

Distilled to its essence, the commissioner's argument is that this case presents no conflict between the remedial provisions of chapters 20 and 21: Allstate violated chapter 21, for which the appropriate sanction was an order terminating the effectiveness of the rates; Allstate also violated chapter 20, for which an appropriate sanction was an order by the commissioner requiring a refund. This simplification of the commissioner's argument exposes the distortion, perhaps unintentional, therein. Without the chapter 21 violation there would be no basis for a finding that Allstate violated chapter 20. Chapter 21 expressly provides that the sanction for violating chapter 21 "shall not affect a contract or policy made or issued before the date the filing becomes ineffective."

Chapter 21 further provides that to the extent that other provisions of the Insurance Code are inconsistent with the provisions of that chapter, chapter 21 shall govern with respect to automobile and home insurance. MCL 500.2106; MSA 24.12106. The conflict is evident: the Legislature has carefully spelled out its intention that the sanction of a refund order is not a remedy available for a chapter 21 violation. The commissioner, however, argues that the chapter 21 violation gives rise to a chapter 20 violation and that a refund is a proper remedy under chapter 20.

The provisions of chapter 20 of the Insurance Code and the remedies therein are cumulative of the other provisions of the code. MCL 500.2050; MSA 24.12050. The commissioner argues that this section alleviates the tension between the two chapters. It does not. This provision clarifies that the facts giving rise to a violation of chapter 20 may also constitute a violation of some other provision of law and that the remedy for a chapter 20 violation is in addition to whatever other remedies may exist for violations of other provisions of law. However, the fact that the provisions of chapter 20 are to be regarded as cumulative and supplemental to other provisions of law simply does not address the situation with which we are faced here, i.e., a situation in which one set of remedies irreconcilably clashes with another.

In this case, the sole basis for finding the chapter 20 violation is the chapter 21 violation. This is distinct from the situation where one set of actions gives rise to a violation of both chapter 20 and chapter 21. In other words, if, hypothetically, chapter 21 proscribed certain methods of formulating rates and chapter 20 defined the same conduct as an unfair practice, and if an insurer committed such conduct, then both chapters would have been

violated and the sanctions of both chapter 20 and chapter 21 could be imposed. No conflict would exist in that hypothetical case, because the acts committed would constitute a violation of chapter 20 as well as chapter 21. But, in this case, chapter 20 does not establish adjacency or high/low requirements and define failure to comply with such requirements as an unfair or deceptive practice. Rather, chapter 20 requires "sound actuarial principles" and "a reasonable classification system" in certain instances. The commissioner argues that failure to comply with any other provision of the Insurance Code constitutes a violation of chapter 20 and therefore permits the sanction of a refund order.

Although the commissioner argues in apparent good faith that a chapter 20 violation is permitted under these circumstances, it is hard to regard this argument as anything but specious where the chapter 20 violation is expressly and solely premised upon a chapter 21 violation, i.e., premised upon the legal conclusion that chapter 21 was violated, not upon the acts giving rise to the chapter 21 violation. To hold that a chapter 21 violation subjects an insurer to a refund order (a chapter 20 remedy) would frustrate the clear intent of the Legislature. The wisdom of that legislative intent is not at issue, and the imposition of the chapter 20 refund remedy by this Court for what is clearly a chapter 21 violation would require us to employ facile reasoning to elevate form over substance.

We need not belabor the analysis with maxims of statutory interpretation. Nor is it necessary for us to pass upon the commissioner's argument that the phrases "sound actuarial principles" and "reasonable classification system" encompass compliance with other laws. It is enough for purposes of

the instant analysis to understand that the commissioner argues that the terms of § 2027 make compliance with chapter 21 a requirement of chapter 20, and that a chapter 20 violation based on a chapter 21 violation may be remedied under the provisions of chapter 20. This smacks of bootstrapping, of circularity, or of an effort to evade the remedial scheme plainly set forth in chapter 21. However, we need not conclude that this was the commissioner's actual intent, and we do not so intimate. We merely conclude that the Legislature's manifest intention concerning remedies or sanctions for chapter 21 violations would be defeated if we adopted the interpretation of § 2027 advanced by the commissioner. Because the commissioner's interpretation is not supported by similarly strong evidence of Legislative intent, we conclude that the commissioner erroneously ruled that a chapter 21 violation in and of itself gives rise to a § 2027 violation, which may be remedied by chapter 20 remedies. The circuit court correctly concluded that the commissioner's final decision and order was affected by a substantial and material error of law.

Affirmed.