*In re* BRZEZINSKI

Docket No. 171847. Submitted May 16, 1995, at Marquette. Decided
December 28, 1995, at 9:20 A.M. Leave to appeal sought.

The Menominee County Probate Court, William A. Hupy, J., took
jurisdiction over John Brzezinski, III, a minor, upon a petition
alleging neglect by the child's mother, Donna Schuette, who
had been awarded custody of the child by an Illinois court. The
probate court placed the child in care outside the child's own
home. The Illinois court subsequently awarded custody of the
child to the child's father, John Brzezinski, Jr., who then
objected to continued probate court jurisdiction over the child.
The probate court continued the child's out-of-home placement
and ordered Mr. Brzezinski to reimburse the probate court $125
a week for the cost of such placement. The probate court
subsequently placed the child in Mr. Brzezinski's home but
continued to order reimbursement of the accrued costs of out-
of-home placement. Mr. Brzezinski moved for a redetermina-
tion of his reimbursement obligation. The probate court denied
the motion, determining that MCL 712A.18(2); MSA
27.3178(598.18)(2) required reimbursement of the full cost of
out-of-home placement. Mr. Brzezinski appealed to the Menomi-
nee Circuit Court, Francis D. Bouillette, J., which determined
that the probate court lost authority to order reimbursement
once the child was placed in Mr. Brzezinski's home because
§ 18(2) allows reimbursement only during the period the child
remained in out-of-home placement. The State of Michigan,
through the Menominee County Prosecutor, appealed by leave
granted.

The Court of Appeals *held:*

1. Section 18(2) requires reimbursement of the cost of out-of-
home placement in a reasonable amount, taking into account
the income and resources of the affected parent. Section 18(2)
does not in every case require reimbursement of the full cost of

REFERENCES

Am Jur 2d,. Juvenile Courts and Delinquent and Dependent Chil-
dren §§ 50, 113; Parent and Child § 34.
See ALR Index under Juvenile Courts and Delinquent Children.

such placement. Reimbursement of full· cost is required by § 18(2) only where reasonable.

2. Section 18(2) requires that the amount of reimbursement for the cost of out-of-home placement be determined when the· order for such placement is entered and that the reimbursement obligation continue for the entire period the child is out of the home. A probate court may not defer a determination of the total amount of reimbursement until after the child has returned to its home.

Affirmed.

GRIFFIN, P.J., dissenting, stated that the probate court did not lose authority to require continued reimbursement upon the child's return to its home and that the probate court was not precluded from deferring the final calculation of the reimbursement amount until the child was returned to its home. The matter should be remanded to the probate court for a redetermination of Mr. Brzezinski's reimbursement obligation.

INFANTS — PROBATE COURTS — PLACEMENT OF CHILDREN IN CARE OUTSIDE OF OWN HOMES — REIMBURSEMENT OF PLACEMENT COSTS.

A probate court that takes jurisdiction over a minor child and places the child in care outside the child's own home and under state or court supervision must order reimbursement by the child, parent, guardian, or custodian to the court of the cost of such placement in a reasonable amount, taking into consideration the income and resources of the child, parent, guardian, or custodian; the amount of reimbursement must be determined when the order of out-of-home placement is made (MCL 712A.18[2]; MSA 27.3178[598.18][2]).

*Daniel E. Hass,* Prosecuting Attorney, and *Michael A. Rola,* Assistant Prosecuting Attorney, for the petitioner.

*Peterson, Beauchamp, DeGrand, Reardon & Hall, P.C.* (by *Russell W. Hall*), for the respondent.

Before: GRIFFIN, P.J., and SMOLENSKI and R. L. ZIOLKOWSKI,* JJ.

SMOLENSKI, J. Petitioner State of Michigan, by

---

* Circuit judge, sitting on the Court of Appeals by assignment.·

and through the Menominee County Prosecutor, appeals by delayed application for leave a September 1993 Menominee Circuit Court opinion and order reversing a Menominee County Probate Court order that had denied a motion by respondent John Brzezinski, Jr., for a redetermination of the amount of reimbursement owed for the out-of-home placement of his minor son, John Frank Brzezinski, III. We affirm.

This case involves the interpretation of § 18(2) of Chapter XIIA (Juveniles and Juvenile Division) of the Probate Code, MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.* Section 18(1) provides that if the probate court finds that a child is within the provisions of Chapter XIIA, the court may enter various orders of disposition "appropriate for the welfare of the child and society . . . ." MCL 712A.18(1); MSA 27.3178(598.18)(1). Thus, as relevant to this case, a probate court may order that a child be placed in care outside the home, such as a foster care home or a public or private facility. MCL 712A.18(1)(c), (d), and (e); MSA 27.3178(598.18)(1) (c), (d), and (e). Section 18(2), the provision at issue in this case, provided in relevant part at the pertinent time as follows:

> An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service. The order shall be reasonable, taking into account both the income and resources of the child, parent, guardian, or custodian. The amount may be based upon the guidelines and model schedule created under subsection (6). The reimbursement provision shall apply during the entire period the child remains in care outside of the child's own home and under state or court supervision, unless the child is in

the permanent custody of the court. The court shall provide for the collection of all amounts ordered to be reimbursed, and the money collected shall be accounted for and reported to the county board of commissioners. Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision. [1982 PA 398, MCL 712A.18(2); MSA 27.3178(598.18)(2), subsequently amended by 1993 PA 344, 1994 PA 264, and 1994 PA 355.][1]

In this case, the minor, John Frank Brzezinski, III, born April 6, 1979, is the child of respondent and Donna Schuette. In December 1987, an Illinois court entered an order of parentage and support that granted physical custody of the child to

[1] Section 18(2), as amended by 1993 PA 344, 1994 PA 264, and 1994 PA 355, currently provides in relevant part as follows, with additions or changes indicated by italics and deletions indicated by ellipsis:

An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for . . . reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service. The order shall be reasonable, taking into account both the income and resources of the child, parent, guardian, or custodian. The amount may be based upon the guidelines and model schedule created under subsection (6). *If the child is receiving an adoption support subsidy pursuant to section 115j(4) of the social welfare act, Act No. 280 of the Public Acts of 1939, being section 400.115j of the Michigan Compiled Laws, the amount shall not exceed the amount of the support subsidy.* The reimbursement provision *applies* during the entire period the child remains in care outside of the child's own home and under state or court supervision, unless the child is in the permanent custody of the court. The court shall provide for the collection of all amounts ordered to be reimbursed, and the money collected shall be accounted for and reported to the county board of commissioners. Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision. [MCL 712A.18(2); MSA 27.3178(598.18)(2).]

Schuette and ordered respondent to pay child support. In May 1991, the Menominee County Probate Court exercised jurisdiction over the child pursuant to a neglect petition and placed the child in care outside the home. In July 1991, while the neglect proceedings were still continuing and the child remained in care outside the home, the Illinois court awarded respondent custody of the child. At the next scheduled hearing in the Menominee County Probate Court in August 1991, respondent, citing the Illinois court custody award, objected to the continued jurisdiction of the probate court. However, the probate court continued the child in care outside the home. The probate court further ordered respondent to submit a financial statement.

Following a September 1991 hearing, the probate court entered an order for reimbursement, which provided in relevant part as follows:

THE COURT FINDS:

3. John Brzezinski, Jr., father, of John Brzezinski, III has been found to be financially able to reimburse the court for costs incurred.

IT IS ORDERED:

4. Costs and expenses are assessed as follows:

* * *

d. Other: Reimbursement for out-of-home placement.

5. Reimbursement for the above charges shall be as follows: John Brzezinski, Jr. shall reimburse the court at the rate of $125.00 per week, beginning September 10, 1991, continuing until the balance is paid in full. . . . .

6. Payments shall be applied against assessed charges as follows: Reimbursement for out-of-home placement.

Following a February 1992 review hearing, the

probate court entered a supplemental order of disposition continuing the child in the temporary custody of the court but changing the child's placement to respondent's home, subject to the court's continuing, periodic review. This supplemental order specifically provided as follows:

> The previous Order For Reimbursement for both Donna Schuette and John Brzezinski, Jr. shall remain in full force and effect (last day of placement being 2/13/92).

In April 1992, respondent received a letter indicating that the amount due for the child's out-of-home placement was between $15,000 and $16,000. Respondent thereafter moved for a redetermination of reimbursement. At the February 1993 motion hearing, respondent contended that he was liable only for reimbursement in the amount $125 a week from September 10, 1991, to the date the child returned home (February 14, 1992) pursuant to the language of § 18(2) providing that "the reimbursement provision shall apply during the entire period the child remains in care outside of the child's own home and under state or court supervision." Respondent argued that the statutory language providing that the "court shall provide for the collection of all amounts ordered to be reimbursed" applied only to the $125 a week payments and "not the full amount of costs incurred by this Court." Respondent also argued that the statutory language providing that "[c]ollections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision" applied in this case only to any delinquent $125 a week payments incurred while the child was in out-of-home care.

Petitioner argued that the court's reimbursement order did not simply order reimbursement in the amount of $125 a week. Petitioner contended that the court had evaluated respondent's financial circumstances and determined that he should reimburse the total cost of the child's out-of-home placement, such total cost payable at the reasonable rate of $125 a week. Petitioner contended that the court could continue to collect $125 a week from respondent even after the child had been placed in respondent's home pursuant to the language of § 18(2) providing for the "collection of all amounts ordered to be reimbursed."

The probate court denied respondent's motion for a redetermination of the reimbursement amount. The probate court reasoned that respondent was obligated to pay the total cost of care and services pursuant to the first sentence of § 18(2), which the court characterized as a clear mandate from the Legislature that the total cost of all care and services must be reimbursed. Although noting that the second sentence of § 18(2) provided that the "order shall be reasonable," the court stated that its reimbursement order in this case was reasonable where "[i]t does set forth a payment plan based upon the actual historical abilities of Mr. Brzezinski." The court stated that there was a delinquent amount caused by respondent's "inability to pay the whole amount while the child was in care, and based upon the reasonableness of the order setting the amount for that payment plan at $125.00 per week," and that this delinquent amount was subject to collection under § 18(2).

Respondent appealed to the Menominee Circuit Court. At the August 1993 appeal hearing, respondent reiterated his arguments concerning the construction and application of § 18(2) to this case. Respondent also contended that the probate

court had erred in interpreting the first sentence of § 18(2) as requiring him to pay the full cost of the child's out-of-home care.

Petitioner contended that the reasonableness requirement of § 18(2) did not prohibit a probate court from ordering parents to reimburse the total cost of a child's out-of-home care. Petitioner also contended that the total cost could be collected even after the child had been returned to the family home pursuant to an order establishing a reasonable rate of reimbursement, taking into account the parents' ability to pay. Petitioner further contended as follows:

> [Petitioner] agrees that the reimbursement ordered in this matter would be unreasonable if the Probate Court had ordered reimbursement after the juvenile John Brzezinski III had been returned to the home *and* released from court supervision, but . . . this was not the case. In this matter, an order of reimbursement specifically continuing the ability to collect reimbursement (i.e. reserving jurisdiction) was issued on September 27, 1991 . . . . At the time of the 9/27/91 reimbursement order, the Probate Court had jurisdiction and maintained supervision over John Brzezinski III. . . . [T]he juvenile was not released from foster care and returned to the home of his natural father until 2/14/92. Further, that the order of 2/14/92 hearing . . . specifically reserved the court's ability to collect reimbursement by indicating . . . that all previous reimbursement orders were to remain in full force and effect.

Petitioner argued that the procedure of "reserving jurisdiction" allowed the probate court to defer a final determination of the total liability until after the child had been returned home and the court had a sufficient factual basis to consider the total expenses involved in light of the parents' resources and ability to pay. Petitioner concluded:

If a Probate Court is only able to consider a parent or guardian's ability to pay reimbursement where the sole time period for consideration of financial ability to pay is limited to the time a child is placed out of the home, then not only could a court not be able to consider negative involuntary changes in circumstances such as loss of employment or a payor becoming permanently disabled and unable to pay, but is [sic] would also not be able to consider positive material changes such as improved employment income, inheritances or lottery winnings. It is the opinion of [petitioner] . . . that such a strict construction of MCL 712.A18 [sic] is unwarranted, as such a construction [sic] does not consider the ability of a child's parent, guardian or custodian to pay reimbursement in a reasonable manner of all costs, but instead requires Probate Courts to disregard such material changes and place the burden of reimbursement on the county. The mere fact that the statute requires that the order of reimbursement be reasonable taking into account the incomes and resources of the child, his parent, guardian or custodian does not prohibit a Probate Court from ordering reimbursement for all costs, nor does it limit the court to orders of reimbursement set while a child is placed out of the home.

The circuit court agreed with respondent that the probate court lacked authority to order continuing reimbursement payments after the child had been placed in his parent's home. Specifically, the circuit court reasoned that § 18(2) authorized reimbursement only during the period "the child remains in care outside of the child's own home and under state or court supervision." The circuit court stated that if § 18(2) were interpreted otherwise, parents would never be able to obtain modification of continuing reimbursement orders after the child had been returned to the home and was no longer under the jurisdiction of the court where

§ 21(1) of Chapter XIIA, MCL 712A.21(1); MSA
27.3178(598.21)(1), provides for a petition for re-
hearing only while the child remains under the
jurisdiction of the probate court.[2] The circuit court
rejected petitioner's argument that relief could be
obtained from continuing reimbursement orders
pursuant to MCR 2.612 (relief from judgment or
order) even if a rehearing was unavailable under
§ 21.

On appeal to this Court, the parties reiterate the
arguments they presented to the circuit court
concerning the construction and application of
§ 18(2) to the facts of this case.

Initially, we note, as have the parties, that we
have found no published case construing the rele-
vant provisions of § 18(2) in the context of the
determination of parental reimbursement.[3] Thus,
the issue is one of first impression.

Clearly in this case, the probate court's Septem-
ber 1991 and February 1992 orders required re-
spondent to reimburse the entire, but as yet unde-
termined, cost of the child's out-of-home placement
at a rate of $125 a week. Accordingly, we could
end our analysis and reverse the circuit court

---

[2] MCL 712A.21(1); MSA 27.3178(598.21)(1) provides in relevant part
as follows:

> An interested person, at any time while the child is under
> the jurisdiction of the court, may file a petition, in writing and
> under oath, for a rehearing upon all matters coming within the
> provisions of this chapter, and upon the rehearing the court
> may affirm, modify, or set aside any order so reviewed.

[3] See, e.g., *In re Plummer Estate,* 42 Mich App 603; 202 NW2d 429
(1972). However, in other contexts, our Supreme Court has variously
noted that pursuant to § 18(2) "a court can take jurisdiction of a child,
incur costs in caring for the child, and order a parent to reimburse
for those costs" or "[t]he natural parents or other caretakers are
required to reimburse the state or county for the cost of foster care if
and to the extent they are financially able." See *In re Macomber,* 436
Mich 386, 394; 461 NW2d 671 (1990); *Mayberry v Pryor,* 422 Mich
579, 592; 374 NW2d 683 (1985).

order by simply noting that the unpaid balance of this entire amount could be collected pursuant to the following provisions of § 18(2):

> The court shall provide for the collection of all amounts ordered to be reimbursed . . . . Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision.

However, this case presents a larger question. To frame the issue precisely, does § 18(2) mandate, as construed by the probate court, that parents reimburse the total cost of a child's out-of-home placement? Alternatively, as contended by petitioner, does § 18(2) allow the probate court, by entering a reimbursement order when the child is out of the home, to defer a final determination of the parents' total liability until after the child has been returned home and the court has a sufficient factual basis to consider the total expenses involved in light of the parents' resources and ability to pay?

Statutory interpretation is a question of law that is reviewed de novo for error on appeal. *Smeets v Genesee Co Clerk,* 193 Mich App 628, 633; 484 NW2d 770 (1993). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 212; 501 NW2d 76 (1993). The first criterion in determining intent is the specific language of the statute. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). The Legislature is presumed to have intended the meaning it plainly expressed. *Frasier v Model Coverall Service, Inc,* 182 Mich App 741, 744; 453

NW2d 301 (1990). Courts may not speculate with respect to the probable intent of the Legislature beyond the words expressed in the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Nat'l Exposition Co v Detroit,* 169 Mich App 25, 29; 425 NW2d 497 (1988). However, if reasonable minds can differ with regard to the meaning of a statute, judicial construction is appropriate. *Dep't of Social Services v Brewer,* 180 Mich App 82, 84; 446 NW2d 593 (1989). Given the parties' disagreement concerning the construction of § 18(2), we believe judicial construction is appropriate in this case.

The probate court construed the first sentence of § 18(2)—

> An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service.

—as mandating that parents must reimburse the entire cost of a child's out-of-home care. Read in isolation, such a construction seems reasonable.

However, in construing a statute, a court should presume that every word has some meaning and should avoid any construction that would render a statute, or any part of it, surplusage or nugatory. *Altman v Meridian Twp,* 439 Mich 623, 635; 487 NW2d 155 (1992). In construing a statute, the entire act must be read as a whole. Effect must be given to every word, sentence, and section if possible. The interpretation of a particular word should be arrived at only "after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole."

*Weems v Chrysler Corp,* 448 Mich 679, 699-700; 533 NW2d 287 (1995).

Thus, the probate court's construction of the first sentence when read in conjunction with the second and third sentences—

> The order shall be reasonable, taking into account both the income and resources of the child, parent, guardian, or custodian. The amount may be based upon the guidelines and model schedule created under subsection (6).

—does not produce a harmonious and consistent enactment as a whole. In other words, construing the first sentence as mandating that the entire cost of a child's out-of-home care must be reimbursed renders nugatory or surplusage the second and third sentences that "[t]he order shall be reasonable, taking into account" the financial capabilities of the child or the child's caretaker, and that "[t]he amount may be based upon" guidelines and a model schedule.

However, all three sentences may be construed so that a harmonious and consistent enactment is produced. The first sentence of § 18(2) establishes the parental obligation to reimburse the cost of a child's out-of-home care while the second and third sentences establish the amount of the obligation (a reasonable amount) as well as the method of determining that amount (parental income and resources must be considered while the guidelines and model schedule created under § 18(6) may be considered). See, e.g., 14 Callaghan's Michigan Pleading & Practice (2d ed), § 113A.59, p 283 (§ 18[2] makes specific provisions for calculating the amount of reimbursement).

Carrying the analysis further, the fourth sentence establishes the period for which the parent's

reimbursement obligation exists—"the entire period the child remains in care outside the child's own home and under state or court supervision." Finally, the fifth and sixth sentences provide for the collection of "all amounts ordered to be reimbursed."

Thus, we conclude that the probate court erred in interpreting the first sentence of § 18(2) as mandating that parents must reimburse the entire cost of a child's out-of-home care.

Our conclusion in this regard is bolstered by the statutory and legislative history of § 18. Courts may examine the legislative history of an act to ascertain the reason for the act and the meaning of its provisions. *Great Lakes Steel Division, Nat'l Steel Corp v Dep't of Labor,* 191 Mich App 323, 327; 477 NW2d 124 (1991). A court may consider journals chronicling legislative history, and the changes in the bill during its passage. *Dep't of Transportation v Thrasher,* 196 Mich App 320, 323; 493 NW2d 457 (1992). A change in a statutory phrase is presumed to reflect a change in the meaning. *In re Childress Trust,* 194 Mich App 319, 326; 486 NW2d 141 (1992).

Before 1982, § 18 provided that the court could enter, among others, the following relevant orders of disposition of a child:

> (c) Place the child, in a suitable boarding home, which if a home of persons not related to the child, shall be licensed as provided by law.
>
> \* \* \*
>
> (e) Commit the child to a public institution or county facility or institution operated as an agency of the court or county or agency authorized by law to receive children of similar age, sex and characteristics. . . . In every commitment to a state or county institution or agency under this subdivision, except when all parental rights are termi-

nated, the order shall contain a provision requiring the parent or parents retaining parental rights to reimburse the state or county monthly for the cost of the care given the child to the extent the parent or parents are able so to do as determined by the court. The amount of reimbursement to be paid shall be included in the order of commitment of the child. . . . Collections shall not be made after a child is released or discharged except delinquent accounts. . . .

(g) [sic] Require that the parent or other adult legally responsible for the care of the child, unless the child is in the permanent custody of the court, provide such care, or reimbuse [sic] the county or state for the cost of any care provided or to be provided by the county or state on order of the court, as shall to the court seem reasonable and within the ability of the parent or adult so to do, and such reimbursement shall be credited to the general fund of the county or state. [1972 PA 175, MCL 712A.18; MSA 27.3178(598.18).]

Thus, before 1982, § 18 contemplated that a parent must reimburse for the cost of care only "to the extent the parent or parents are able so to do as determined by the court" or in an amount "as shall to the court seem reasonable and within the ability of the parent or adult so to do."[4]

In 1982, § 18 was rewritten. See 1982 PA 398. The original bill, HB 4879, eliminated § 18(g), redesignated § 18(e) as § 18(1)(e) while retaining its language concerning reimbursement and collections, and added § 18(2), which provided in relevant part as follows:

An order of disposition placing a child in foster care under subsection (1)(c) shall contain a provision for the reimbursement of government by the parent or other adult legally responsible for the

---

[4] See also 1963 PA 65 and 1953 PA 139.

care of the child, for expenditures made or to be made for the foster care of that child. *The order shall be in an amount that the court considers reasonable and within the ability of the parent or adult to pay.* The reimbursement provision shall apply during the entire period the child remains in foster care, unless the child is in permanent custody of the court. Payments made pursuant to an order issued under this subsection shall be credited, as applicable, to the general fund of the county or state, or to the appropriate county child care fund, as provided in section 117C(1)(D) of Act No. 280 of the Public Acts of 1939, as amended,. being section 400.117C of the Michigan Compiled Laws. [HB 4879, 1981-1982 Michigan Legislative House Bills, 81st Session. Emphasis supplied. See also 1982 Journal of the House 5764.]

Thus, as originally introduced pursuant to HB 4879, § 18(2) provided that the cost of *foster care* would be reimbursed "in an amount that the court considers reasonable and within the ability of the parent or adult to pay," but contained no provision for collections.

HB 4879 was referred to the Committee on Social Services and Youth, which subsequently reported a substitute bill that, in relevant part, again eliminated § 18(g), redesignated § 18(e) as § 18(1)(e) but this time eliminated language concerning reimbursement and collections, and included the following recommended changes for § 18(2):

An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service. *The order shall be in an amount that the court considers reasonable, which amount may be based upon the*

*guidelines and model schedule created under sub-
section (6).* The reimbursement provision shall
apply during the entire period the child remains
in care outside of the child's own home and under
state or court supervision, unless the child is in
the permanent custody of the court. The court
shall provide for the collection of all amounts
ordered to be reimbursed, and the money collected
shall be accounted for and reported to the county
board of commissioners. Collections to cover delin-
quent accounts or to pay the balance due on
reimbursement orders may be made after a child
is released or discharged from care outside the
child's own home and under state or court supervi-
sion. Twenty-five percent of all amounts collected
pursuant to an order entered under this subsection
shall be credited to the appropriate fund of the
county to offset the administrative cost of collec-
tions. The balance of all amounts collected pursu-
ant to an order entered under this subsection shall
be divided in the same ratio in which the county,
state, and federal government participate in the
cost of care outside the child's own home and
under state or court supervision. The court may
also collect benefits from the government of the
United States paid for the cost of care of a court
ward. Money collected for children placed with or
committed to the state department of social ser-
vices shall be accounted for and reported on an
individual child basis. [1982 Journal of the House,
3406-3413, 5764. Emphasis supplied.]

Thus, under the substituted bill, known as "HB
4879 (H-2)," reimbursements for a child's out-of-
home care and collections of such reimbursements
were now controlled by § 18(2). HB 4879 (H-2) also
provided that reimbursement had to be "an
amount the court considers reasonable, which
amount may be based upon the guidelines and
model schedule created under subsection (6)," but
eliminated the provision requiring consideration of
the caretaker's ability to pay.

HB 4879 (H-2) was subsequently adopted by the House. 1982 Journal of the House 5764. A legislative analysis prepared for HB 4879 (H-2) indicated that HB 4879 (H-2) was intended to address the following problem:

> Continued parental financial responsibility during a child's progression through the juvenile justice system is believed to have a positive impact on family involvement and commitment toward resolving the child's problems. These benefits, as well as the potential for increased county and state revenue, could be realized through a more effective reimbursement/collection system. It is believed that a positive change would be to clearly fix responsibility for collections at the county level [due to the closer proximity to and involvement with the affected families], and to increase the county's share of the proceeds accordingly to cover administrative costs. [House Legislative Analysis, HB 4879 Substitute H-2, March 17, 1982.]

This same legislative analysis discussed the content of HB 4879 (H-2):

> The bill would amend the Probate Code to require that a court order placing a child in care outside the child's home, under state or court supervision, contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of the care, unless the child was in the permanent custody of the court. *The reimbursement would be a reasonable amount,* and could be based on guidelines and a model schedule for reimbursement based on the person's income and resources developed by the state court administrator, in consultation with DSS and the Michigan Probate and Juvenile Court Judges Association. . . .
> The court would provide for the collection of all reimbursements, and the money collected would be accounted for and reported to the county board of

commissioners. Collections to cover delinquent amounts or to pay the balance due on reimbursement orders could be made after the child was released from state or county care. [House Legislative Analysis, HB 4879, March 17, 1982. Emphasis supplied.]

This legislative analysis also noted the following argument for passage of HB 4879 (H-2):

The bill would reinforce the concept of continued parental responsibility for children who are placed in temporary custody of the court or state, while providing increased revenues to the levels of government responsible for such care. *Parents who are required to reimburse the court for foster care or other services, according to their ability to pay,* are more apt to become actively involved in their child's progress through the system and to seek to resolve problems which have contributed to the removal of the child from the home. Delinquency and neglect problems appear at all socio-economic levels, and parents with resources should be obligated *to make a contribution toward the support of children* for whom they receive a tax deduction. [House Legislative Analysis, HB 4879, March 17, 1982. Emphasis supplied.]

HB 4879 (H-2) was subsequently transmitted to the Senate, where it was amended. As relevant to this case, the Senate amended the second sentence of § 18(2) to once again require that the child's or caretaker's financial capabilities be considered in determining reimbursement:

The order shall be reasonable, taking into account both the income and resources of the child, parent, guardian, or custodian. The amount may be based upon the guidelines and model schedule created under subsection (6). [1982 Journal of the House 2963, 5764.]

The House concurred with the Senate's amendments, and HB 4879 (H-2) with the Senate's amendments was enacted as 1982 PA 398. 1982 Journal of the House 5764. The relevant provisions of § 18(2) enacted by 1982 PA 398 were in force at the time of the proceedings in this case.

Thus, in looking at the statutory and legislative history of § 18(2), particularly the Senate amendment requiring that financial capability be considered in determining reimbursement, we believe it is clear that the Legislature has never intended to automatically require that parents reimburse the entire cost of their child's out-of-home placement. Rather, this history makes clear that the Legislature intends that the amount of parental reimbursement be a reasonable amount, taking into account the parents' ability to pay. This conclusion is also bolstered by the 1982 legislative analysis, which does not indicate that the purpose of the reimbursement provisions of § 18(2) is to recoup the entire cost of a child's out-of-home care, but rather indicates that the purpose of requiring reimbursement is to encourage continued family involvement in the child's progress through the system and to improve the effectiveness of collecting such amounts by fixing the responsibility at the county level.[5]

We acknowledge that a reasonable amount could

---

[5] See also House Legislative Analysis, SB 137 and SB 138, May 8, 1989:

When a young person is placed in care outside of his or her home (as a delinquent or abused or neglected child, for example) under either the juvenile code or the Code of Criminal Procedure, the court order is required to contain a provision for the parent, guardian, custodian, or child to provide a certain amount of reimbursement for the cost of care, taking into account the income and resources of the person responsible for the reimbursement. There are guidelines and a model schedule created by the state court administrator that may be used by the court in determining reimbursement levels.

be the entire cost of the child's out-of-home place-
ment in light of the parents' resources. Thus, we
decide only that the probate court erred in inter-
preting the first sentence of § 18(2) as mandating
that parents must reimburse the entire cost of a
child's out-of-home care.

What of petitioner's contention that by entering
a reimbursement order when the child is out of
the home, a probate court can defer a final deter-
mination of the parents' total liability until after
the child has been returned home and the court
has a sufficient factual basis to consider the total
expenses involved in light of the parents' resources
and abilities to pay? This argument appears to
concern the timing of the court's determination of
the amount of reimbursement. Petitioner makes
persuasive arguments for so construing § 18(2).

However, the language of § 18(2) gives no indica-
tion that the Legislature intended the construction
sought by petitioner. Rather, the first three sen-
tences of § 18(2), when read together, indicate that
the Legislature intended that the determination of
the amount of reimbursement be made when the
order placing the child out of the home is entered,
i.e., an order placing a child in out-of-home care
shall contain a reimbursement provision for the
cost of care that shall be reasonable. The fourth
sentence provides that the reimbursement obliga-
tion continues for the entire period the child is out
of the home. And, the fifth and sixth sentences
provide for the collection of "all amounts ordered
to be reimbursed" under the first four sentences.

Again, as indicated previously, an order placing
a child in out-of-home care could conceivably re-
quire reimbursement for the entire weekly or
monthly cost of the child's care, if such cost were
"reasonable." We note that we need not decide the
issue whether a reimbursement order can be modi-

fied during the period the child is out of the home
if the parents' resources change. Rather, we hold
only that under the present statutory language, as
applied to the facts of this case, the Legislature did
not intend to allow a probate court to defer a
determination of the total amount of reimburse-
ment owed by a parent until after the child has
returned home simply by entering a reimburse-
ment order while the child is out of the home.
Despite the persuasiveness of petitioner's argu-
ments, particularly in light of dwindling resources,
such arguments must be addressed to the Legisla-
ture. Our task is only to ascertain and give effect
to the intent of the Legislature. *Allstate Ins Co v
Dep't of Ins,* 195 Mich App 538, 547; 491 NW2d
616 (1992).

In this case, the probate court acknowledged
that the $125 a week payments constituted a
reasonable amount of reimbursement in light of
respondent's resources. Thus, we affirm the circuit
court's opinion for the reasons stated in this opin-
ion. We decline to address petitioner's two remain-
ing issues where such issues were decided in peti-
tioner's favor on appeal to the circuit court.

Affirmed.

R. L. ZIOLKOWSKI, J., concurred.

GRIFFIN, P.J. *(dissenting).* I respectfully dissent. I
agree with the majority that the probate court
improperly construed MCL 712A.18(2); MSA
27.3178(598.18)(2) as establishing an absolute, un-
qualified requirement that parents reimburse the
state the entire cost of a child's out-of-home care.
However, in my view, the appropriate remedy for
this error is a remand for a redetermination re-
garding the amount respondent must reimburse
the state. I would not use the probate court's error

in establishing the amount of respondent's debt to uphold a ruling of the circuit court that completely terminated respondent's debt. Accordingly, I would reverse the circuit court order and remand the matter to the probate court with instructions to reevaluate the amount of respondent's obligation to the state.

I

After respondent's child was ordered into temporary state custody, the probate court ordered respondent and his ex-wife to completely reimburse the state for the costs it incurred for the care of the child. See MCL 712A.18(2); MSA 27.3178(598.18)(2). Recognizing respondent's "inability to pay the whole amount" of this reimbursement obligation all at once, the probate court ordered the "delinquent" amount to be paid through $125 weekly installments. The probate court ordered that such payments must continue "until the balance is paid in full." However, because respondent's child remained in foster care when the reimbursement order was issued, the total amount of respondent's reimbursement obligation was uncertain and not determined at that time.

Thereafter, the probate court gave respondent custody of his child. The probate court retained its jurisdiction over the case, however. The probate court also ordered respondent to continue making the weekly $125 payments until the reimbursement order was fully satisfied. The total amount of respondent's reimbursement obligation was thereafter determined to be $16,000.

On appeal, the circuit court addressed the question "whether or not the Probate Court has the

authority under [MCL 712A.18(2); MSA 27.3178(598.18)(2)] to order reimbursement even after the child is placed in the parent's home." In ruling that it did not, the circuit court concluded that MCL 712A.18(2); MSA 27.3178(598.18)(2) clearly precludes a probate court from requiring respondent to continue making payments on the outstanding portion of a reimbursement order once he obtained custody of his child. The circuit court's reasoning was largely premised on the fact that MCL 712A.18(2); MSA 27.3178(598.18)(2) "only authorizes reimbursement during the period of time 'the child remains in care outside the child's own home and under state or court supervision . . . .' "

II

Initially, I agree with the majority with respect to its holding that MCL 712A.18(2); MSA 27.3178(598.18)(2) does not establish an absolute, unqualified mandate that a parent repay the entire cost the state incurs in caring for that parent's child. Thus, I agree that the probate court should have considered whether ordering respondent to fully reimburse the state is "reasonable." Therefore, because the probate court appears to have premised the amount it ordered respondent to reimburse the state upon an erroneous assumption that it was obligated to force respondent to repay the entire amount incurred by the state, I would remand this case with instructions for the probate court to redetermine the amount respondent must reimburse the state. However, unlike the majority, I do not believe that the erroneous assumption upon which the *amount* of the debt was premised constitutes grounds to eliminate the *entire debt,* regardless of the amount, once the child is returned to the home of a parent.

III

The circuit court construed the phrase in MCL 712A.18(2); MSA 27.3178(598.18)(2) that "[t]he reimbursement provision shall apply during the entire period the child remains in care outside of the child's own home and under state or court supervision . . ." as a limitation on the time when the probate court can collect the unpaid balance of a reimbursement order. Specifically, the circuit court ruled that MCL 712A.18(2); MSA 27.3178(598.18)(2) limits a court's authority to order installment payments on the outstanding balance of a reimbursement order to those payments that come due during the period the child remains under state or court supervision.[1] I conclude that the circuit court's construction of MCL 712A.18(2); MSA 27.3178(598.18)(2) confuses the distinct issues of (1) the time during which the state's accumulating expenses can be made part of respondent's reimbursement obligation and (2) the time when respondent can be forced to repay the amount for which he has been found responsible to reimburse.

A

MCL 712A.18(2); MSA 27.3178(598.18)(2) provides in part:

> An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision shall contain a provision for reimbursement . . . for the cost of care or service.

There is no dispute that the purpose of this statute is to obligate parties to help shoulder the costs the

---

[1] The circuit court would limit any subsequent collections to any delinquent payment that came due during out-of-home care.

state incurs during the period that a child is ordered into out-of-home placement. Also clear is the fact that the statute provides for the reimbursement order to be included in the order that originally places a child under state supervision. Thus, the court must order a party to reimburse the state's expenses before it is aware how much the state will ultimately spend on a child. In my opinion, this is why the Legislature included the following provision:

> The reimbursement provision shall apply during the entire period the child remains in care outside of the child's own home and under state or court supervision . . . . [MCL 712A.18(2); MSA 27.3178(598.18)(2).]

I view this provision as a mechanism to ensure that a court considers the entire amount the state spent on a child before it determines a party's total reimbursement obligation. I find this interpretation consistent with the stated purpose of MCL 712A.18(2); MSA 27.3178(598.18)(2). Therefore, I conclude that the circuit court erred in interpreting the quoted provision as a means to limit the period when the probate court may order a party to make payments on an outstanding reimbursement obligation. Consistent with this conclusion is the fact that MCL 712A.18(2); MSA 27.3178(598.18)(2) further provides:

> The court shall provide for the collection of all amounts ordered to be reimbursed, and the money collected shall be accounted for and reported to the county board of commissioners. *Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home* and under state or court supervision. [Emphasis added.]

In the instant case, the probate court ordered respondent to continue making payments on the outstanding balance of the amount he was ordered to reimburse the state. In other words, the probate court provided a means to collect the balance that was due under the terms of the reimbursement order. In my view, the circuit court erred in interpreting MCL 712A.18(2); MSA 27.3178(598.18)(2) as a limitation on the probate court's ability to take this action. Aside from contradicting the plain language of MCL 712A.18(2); MSA 27.3178(598.18) (2), the circuit court's conclusion, that only those payments that come due when the state has physical custody of a child may be the subject of reimbursement would inspire several unfortunate results. First, the clear legislative intent of having the state reimbursed for as much of its costs as is reasonable would be partially frustrated if the outstanding portion of the reimbursement obligation must be forgiven once the parents regain custody of their child. Second, the ruling would create a clear disincentive to a probate court's use of an installment method in attempting to ease the burden an already struggling parent will face in complying with the reimbursement obligation. Third, the circuit court's ruling could create a perception that, in order to achieve maximum reimbursement, the state might try to retain custody of a child until a greater amount of its foster care expenses are reimbursed.[2]

B

Further, I disagree with the majority's conclusion that MCL 712A.18(2); MSA 27.3178(598.18)(2)

[2] I do not suggest that either the state or any court would employ such logic in making a custody determination. I note the issue, however, only because I would seek to avoid any possibility that anyone would even consider making such a claim.

precludes the probate court from deferring the final calculation of a parent's total reimbursement obligation until after a child is returned to in-home custody. Consistent with the lack of any authority or statutory language to forbid such a procedure, MCL 712A.18(2); MSA 27.3178(598.18)(2) provides that the reimbursement order (which must be included in the original order that places a child in state custody) consider the expenses incurred by the state throughout the "entire period" a child remains in state care. Implicit in the timing of this requirement is that a court will never be able to determine the full amount the state will spend on a child's foster care until after the state has finished caring for the child. With this in mind, I see no reason why a decision regarding the ultimate amount of respondent's reimbursement obligation—a decision that is already implicitly deferred—cannot be deferred until after a child is returned to parental custody. A contrary conclusion would partially defeat the purpose of the statute because some of the state's costs would almost inevitably be omitted from the court's final analysis of the amount the state must be reimbursed. Indeed, not only is a probate court never sure how long a child will remain in out-of-home care, but a final accounting of the amount the state will ultimately spend on a child will rarely, if ever, be completed at the instant the child is transferred from state care to parental care. Therefore, I would hold that the probate court did not err in deferring the final determination of the amount to be reimbursed until after the child was returned to respondent's custody.

IV

Finally, I reject the circuit court's conclusion

that the probate court's order should be invalidated on the basis that respondent's continuing obligation would not be modifiable if he experienced hardship. First, this potentiality was inappropriately considered in this case because, here, the probate court retained jurisdiction over the case. Therefore, respondent would have been able to seek a modification of the judgment through MCL 712A.18(1)(b); MSA 27.3178(598.18)(1)(b); *In re Macomber,* 436 Mich 386; 461 NW2d 671 (1990). Second, even if the probate court had not retained jurisdiction, respondent would have been able to seek a modification of the judgment through MCR 2.612(C)(1)(f), which provides, in pertinent part, that a court may relieve a party of a final judgment for any "reason justifying relief from the operation of the judgment."

For these reasons, I respectfully dissent. I would reverse the circuit court order and remand the matter to the probate court for a redetermination of the amount of respondent's debt obligation.