*In re* REISWITZ

Docket No. 205903. Submitted May 19, 1999, at Marquette. Decided June 11, 1999, at 9:05 A.M. Leave to appeal sought.

In 1993, the Menominee County Probate Court, William A. Hupy, J., took jurisdiction over Nathan G. Reiswitz, a minor born on January 29, 1978, after Reiswitz admitted responsibility for a charge of larceny in a building. The court placed Reiswitz in the care and custody of the Department of Social Services and preserved reimbursement. In 1994, the court entered an amended order requiring Reiswitz' mother, Kathy Schuette, to pay reimbursement at the rate of $27 a week for her son's care during his placement. Schuette thereafter sought a reduction in the amount of reimbursement, but the motion was denied. Schuette appealed to the Menominee Circuit Court, not disputing the rate of payment, but asserting that the probate court loses jurisdiction over a child's parents (and hence the authority to continue a reimbursement order) once it loses jurisdiction over the child. She claimed that the probate court lost jurisdiction over her son when he reached the age of nineteen on January 29, 1997. She also alleged that reimbursement was unreasonable if it required her to continue to repay the cost of the out-of-home care well into Reiswitz' adult life. The circuit court, John D. Payant, J., entered an order denying the request for reduced reimbursement, finding that the probate court did have jurisdiction to enforce its reimbursement orders until the reimbursement was paid in full, even after the juvenile was no longer subject to the jurisdiction of the probate court. The court did not address the issue regarding the reasonableness of extending Schuette's payments years into the future. Schuette appealed by leave granted.

The Court of Appeals *held*:

1. Schuette cannot avoid the effect and requirements of the reimbursement order properly entered by the probate court at a time when it had jurisdiction.

2. MCL 712A.18(2); MSA 27.3178(598.18)(2) provides the probate court with the ability to order reimbursement for the costs incurred by the state when out-of-home placement is ordered. The statute further provides for the collection of delinquent amounts of such ordered reimbursement. A probate court may order and col-

lect reimbursement, both before and after the juvenile reaches the age of majority, for the costs incurred by the state when out-of-home placement is ordered. The probate court had jurisdiction over the parties when it exercised its authority under subsection 18(2) to order reimbursement and it has the authority, under its contempt power, to enforce its proper order after Reiswitz turned nineteen. The total amount of reimbursement ordered became a fixed obligation. Any further involvement by the probate court would involve the satisfaction of a legal obligation and would not involve an exercise of jurisdiction over the juvenile or his parents to impose new obligations or to affect the disposition of the juvenile.

3. A determination to order reimbursement paid in installments that will continue after the juvenile is no longer under the jurisdiction of the probate court is not automatically unreasonable. The amended reimbursement order requiring Schuette to pay $27 a week was not unreasonable.

Affirmed.

1. INFANTS — PROBATE COURTS — PLACEMENT OF CHILDREN IN CARE OUTSIDE OWN HOME — REIMBURSEMENT OF PLACEMENT COSTS.

A parent cannot avoid the requirements of a proper order requiring the parent to reimburse the state when out-of-home placement of a juvenile is ordered and the reimbursement order is entered by the probate court at a time when it has jurisdiction over the juvenile and its parent; the probate court may order that the reimbursement be paid in installments, may collect delinquent amounts of such ordered reimbursement under its contempt power, and may order and collect reimbursement both, before and after the juvenile reaches the age of majority, for the costs incurred by the state (MCL 712A.18[2]; MSA 27.3178[598.18][2]).

2. INFANTS — PROBATE COURTS — PLACEMENT OF CHILDREN IN CARE OUTSIDE OWN HOME — REIMBURSEMENT OF PLACEMENT COSTS.

An order requiring a parent to reimburse the state when out-of-home placement of a juvenile is ordered is not automatically unreasonable where the order requires the reimbursement to be paid in installments that will continue even after the juvenile is no longer under the jurisdiction of the court (MCL 712A.18[2]; MSA 27.3178[598.18][2]).

*Law Office of Jonathan P. Barstow, P.C.* (by *Jonathan P. Barstow*), for Kathy Schuette.

*Daniel E. Hass,* Prosecuting Attorney, and *William G. Merkel,* Assistant Prosecuting Attorney, for the state of Michigan.

Before: WHITBECK, P.J., and MARKMAN and O'CONNELL, JJ.

PER CURIAM. Appellant Kathy Schuette appeals by leave granted an order of the Menominee Circuit Court affirming a Menominee County Probate Court order that denied Schuette's request for a reduction in a reimbursement order. The probate court ordered Schuette to reimburse appellee state of Michigan for the cost of care and supervision during the placement of her son, Nathan Gerald Reiswitz, with the former Department of Social Services (the DSS). We affirm.

### I. BASIC FACTS AND PROCEDURAL HISTORY

Reiswitz was born on January 29, 1978. In 1993, Reiswitz admitted his responsibility for a charge of larceny in a building, MCL 750.360; MSA 28.592. The larceny involved Reiswitz' theft of a bottle of arsenic from his high school and was coupled with indications that Reiswitz planned to put the arsenic in Schuette's coffee. At a dispositional hearing in November 1993, the probate court ordered that Reiswitz be placed in the care and supervision of the DSS. Schuette indicated that she understood she would have to pay for her son's care during this placement. The probate court ordered that reimbursement was preserved, directed Schuette to fill out a financial statement, and stated that when the statement was returned, the probate court would schedule a rate for reimbursement. Later that month, the probate court

entered an order providing that Schuette pay reimbursement at the rate of $270 a week.

Schuette moved for reconsideration of this reimbursement order, contending that it had incorrectly taken into account her husband's income and that, because her husband had no legal support obligation for her son, his income should not have been considered in determining the rate of reimbursement. At the hearing, the probate court agreed that the husband's income should not have been considered and recalculated the reimbursement rate at $27 a week, a calculation with which Schuette agreed. The probate court therefore entered an amended order of reimbursement providing for payment at the rate of $27 a week.

Schuette then appealed from the amended order of reimbursement to the Menominee Circuit Court. Schuette did not dispute the rate of payment, but instead asserted that the probate court was without jurisdiction to order reimbursement for previously incurred costs once Reiswitz returned to his own home, an event that Schuette asserted would not occur until the end of the school year. Schuette further argued that it was unreasonable to order her to reimburse the state for the total cost of Reiswitz' care where the payments would extend years into the future.

The circuit court appeal was stayed pending resolution by this Court of an appeal in a separate case (also arising out of the Menominee Circuit Court) that presented the same issue. Following this Court's decision in that case, *In re Brzezinski*, 214 Mich App 652; 542 NW2d 871 (1995) (hereafter *Brzezinski*), the parties stipulated to continue the stay pending resolution

of an appeal of the decision to the Michigan Supreme Court. After the Michigan Supreme Court summarily reversed this Court's decision for the reasons stated in Judge GRIFFIN's dissent, *In re Brzezinski (State of Michigan v Brzezinski)*, 454 Mich 890 (1997), Schuette apparently abandoned her first issue (which had been based on the argument that was ultimately rejected in *Brzezinski*), and filed a new brief raising the claim that the probate court loses jurisdiction over a child's parents (and hence the authority to continue a reimbursement order) once it loses jurisdiction over the child. Schuette claimed that the probate court had lost jurisdiction over Reiswitz when he reached the age of nineteen on January 29, 1997. Additionally, Schuette reasserted her original second argument: that reimbursement was unreasonable if it required her to continue to repay the cost of out-of-home care well into Reiswitz' adult life.

In July 1997, the circuit court heard oral argument from the parties and ruled that the probate court did have jurisdiction to enforce its reimbursement orders until the reimbursement was paid in full, even after the juvenile was no longer subject to the jurisdiction of the probate court. The circuit court did not address the second issue raised by Schuette. The circuit court entered a written order denying Schuette's request for reduced reimbursement in August 1997.

## II. STANDARD OF REVIEW

The issues in this matter concern questions of statutory interpretation that we review de novo. *Yaldo v*

*North Pointe Ins Co,* 457 Mich 341, 344; 578 NW2d 274 (1998).

### III. THE JURISDICTION OF THE PROBATE COURT

#### A. STATEMENT OF THE ISSUE

In this matter, the probate court entered the amended reimbursement order while the probate court had jurisdiction over the parties. However, the probate court has not attempted to exercise jurisdiction over either Reiswitz or Schuette since Reiswitz turned nineteen. Thus, the first issue in this matter is whether Schuette can avoid the requirements of a proper reimbursement order, entered by the probate court at a time when it had jurisdiction, because before Schuette had fully complied with that order, the probate court's statutory jurisdiction over the parties had ceased. We hold that Schuette cannot avoid the effect of a properly entered reimbursement order.

#### B. STANDARDS OF STATUTORY INTERPRETATION

In *Yaldo, id.* at 346, our Supreme Court summarized the basic standards to be utilized in interpreting a statute:

> The primary goal of judicial interpretation of statutes is to give effect to the intent of the Legislature. In determining legislative intent, we look first at the words of the statute. If the language is clear and unambiguous, judicial construction is not normally permitted. If reasonable minds can differ regarding its meaning, then judicial construction is appropriate. The Legislature is presumed to have intended the meaning it plainly expressed. [Citations omitted.]

C. THE PROBATE COURT'S ORIGINAL JURISDICTION OVER REISWITZ
AND ANCILLARY JURISDICTION OVER SCHUETTE

The probate court is a court of limited jurisdiction. *In re Macomber*, 436 Mich 386, 389; 461 NW2d 671 (1990). It derives its power from statutory authority. *In re Hillier Estate*, 189 Mich App 716, 719; 473 NW2d 811 (1991). In this case, the probate court obtained jurisdiction over Reiswitz under MCL 712A.1; MSA 27.3178(598.1) and MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1) as then in effect.[1] Pursuant to MCL 712A.2a(1); MSA 27.3178(598.2a)(1), this jurisdiction terminated on Reiswitz' nineteenth birthday. Accordingly, the probate court obtained ancillary jurisdiction over Schuette until that time. MCL 712A.6; MSA 27.3178(598.6). Schuette contends that the probate court's authority to compel Schuette to pay reimbursement for the cost of out-of-home care ceased when its jurisdiction over Reiswitz terminated. We regard this as an issue of first impression in this state's jurisprudence.

D. THE PLAIN LANGUAGE OF THE STATUTE

MCL 712A.18(2); MSA 27.3178(598.18)(2) granted the probate court the authority to order reimbursement. At the time of the proceedings below,[2] the statute, in relevant part, provided:

---

[1] Because of statutory amendments effective January 1, 1998, jurisdiction over such juvenile proceedings is now vested in the family division of the circuit courts.

[2] The Legislature subsequently amended MCL 712A.18; MSA 27.3178(598.18) by 1996 PA 243, 1996 PA 244, and 1997 PA 163, but the changes were minor (e.g., changing "child" to "juvenile"), and these amendments did not affect the substance of the statute.

> An order of disposition placing a child in or committing a child to care outside of the child's own home and under state or court supervision *shall contain a provision for the reimbursement by the child, parent, guardian, or custodian to the court for the cost of care or service. The order shall be reasonable,* taking into account both the income and resources of the child, parent, guardian, or custodian. The amount may be based upon the guidelines and model schedule created under subsection (6). The reimbursement provision shall apply during the entire period the child remains in care outside of the child's own home and under state or court supervision, unless the child is in the permanent custody of the court. . . . *Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision.* . . . In cases of delinquent accounts, the court may also enter an order to intercept state tax refunds or the federal income tax refund of a child, parent, guardian, or custodian and initiate the necessary offset proceedings in order to recover the cost of care or service. [Emphasis supplied.]

The plain language of this statute provides the probate court with the ability to order reimbursement for the expenses associated with providing care for a juvenile under court auspices outside the juvenile's home. The statute also ensures that the probate court will obtain reimbursement for the care or service of a juvenile. "[T]he purpose of this statute is to obligate parties to help shoulder the costs the state incurs during the period that a child is ordered into out-of-home placement." *Brzezinski, supra* at 676-677 (GRIFFIN, P.J., dissenting). The Legislature clearly recognized that the collection of reimbursement ordered pursuant to the statute may be hampered by the inability of

the obligor to pay the amount ordered and that accounts may therefore become delinquent. The Legislature, accordingly, provided for the collection of delinquent accounts, even going so far as to provide the probate court authority to intercept state and federal tax refunds and apply them to the payment of delinquencies. MCL 712A.18(2); MSA 27.3178(598.18)(2).

In *Brzezinski, supra* at 663-672, this Court reviewed the language and history of subsection 18(2) and concluded that the statute did not *mandate* that parents (or presumably any of the named parties) reimburse the *entire* cost of a child's out-of-home care. The majority also concluded that, because subsection 18(2) provided for the payment of "reasonable" reimbursement based on "the income and resources of the child, parent, guardian, or custodian," the probate court should use its discretion to determine what constitutes a "reasonable" amount. According to the majority, that amount might, in a particular case, be the entire amount of the out-of-home placement. *Brzezinski, supra* at 671-672.

In a dissent that was subsequently adopted by the Michigan Supreme Court, 454 Mich 890 (1997), Judge GRIFFIN agreed with the majority's conclusion that the statute did not establish an absolute mandate that parents reimburse the entire cost of a child's out-of-home care. *Brzezinski, supra* at 675 (GRIFFIN, P.J., dissenting). Judge GRIFFIN further concluded, however, that the statute permitted the probate court to order that the reimbursement be made in installment

payments and that the final calculation of the total reimbursement amount could be deferred until after a child was returned to in-home custody. *Id.* at 678-679.

Here, we take the logic of *Brzezinski* one step further. The plain language of subsection 18(2) is that probate courts may order and collect reimbursement for the costs incurred by the state when out-of-home placement is ordered. The statute further provides for the collection of delinquent amounts of such ordered reimbursement. Judge GRIFFIN in *Brzezinski, supra* at 678, approved the use of installment payments. Such payments clearly operate to the benefit of persons such as Schuette by allowing them to avoid a large, lump-sum amount of reimbursement that might be difficult or impossible for them to pay and instead breaking that large amount into a more manageable series of payments.

Schuette, in effect, seeks to use the favorable installment payment plan as a means of avoiding an obligation to pay the amount of reimbursement determined by the probate court to be reasonable. Judge GRIFFIN explained why the similar interpretation of subsection 18(2) urged by the appellee in *Brzezinski* would be contrary to the intent of the Legislature, and with a slight modification, indicated in italics below, we can apply his observations to this case:

> First, the clear legislative intent of having the state reimbursed for as much of its costs as is reasonable would be partially frustrated if the outstanding portion of the reimbursement obligation must be forgiven once the parents regain custody of their child [*or, coextensively, once the*

*child reaches the age of majority*]. Second, the ruling would create a clear disincentive to a probate court's use of an installment method in attempting to ease the burden an already struggling parent will face in complying with the reimbursement obligation. [*Brzezinski, supra* at 678.]

Thus, we hold that a probate court may order and collect reimbursement, both before and after the juvenile reaches the age of majority, for the costs incurred by the state when out-of-home placement is ordered.

### E. ADDITIONAL CONSIDERATIONS

#### (1) DELAY IN PAYMENT

We note that if a probate court lost the power to enforce a reimbursement order once the juvenile reached the age of nineteen, then it would always be in the parents' interest to avoid paying as much of the reimbursement as possible, knowing that any arrearage would be wiped out once the juvenile reached that age. This would either discourage probate courts from ordering installment payments (with the concomitant result that parents in some cases would be faced with large lump-sum payments that they would have difficulty paying), or would result in installment payments that were scheduled so as to be completed at the time jurisdiction over the juvenile terminated (thereby also significantly increasing the amount of each payment and reducing the benefits to parents of the installment payment method of reimbursement).

Even these alternatives could not prevent arrearages from occurring in particular cases. The period between when out-of-home care might cease and a juvenile reaches the age of nineteen might be very

brief, or even nonexistent. In such circumstances, the only alternative for the probate court would be to order the immediate payment of a lump-sum amount. Further, nothing would prevent an obligor from paying only a portion of the lump-sum amount, or nothing at all. If Schuette's interpretation of subsection 18(2) is correct, the probate court would lose any authority to compel the payment of delinquent amounts when it lost jurisdiction over the juvenile. This is clearly inconsistent with the language of the statute ensuring that delinquent reimbursement accounts could be collected by the probate court. Schuette's interpretation of subsection 18(2) would therefore defeat the statute's provisions for the reimbursement of costs expended in the out-of-home care of juveniles.

### (2) THE ANALOGY TO CHILD SUPPORT ARREARAGES

We further note that interpreting subsection 18(2) to provide the probate court with authority to command installment payments of reimbursement that would continue beyond the date when a juvenile reaches the age of nineteen, and also to provide for the authority to collect arrearages, is consistent with the approach this Court has previously taken in the similar setting of child support arrearages. In *Wasson v Wasson*, 52 Mich App 91, 97; 216 NW2d 594 (1974), this Court held that a circuit court had jurisdiction to use its contempt power to enforce an order to pay arrearages of child support that accrued before a child reached adulthood, even where the contempt action was not commenced until after the child reached that age. Child support payments are similar to the reimbursement payments under subsection

18(2) in that in both cases a payment schedule has been set up to provide for a parent's payment for the care and support of the child. Further, in both cases the court's jurisdiction over the child ends at some predetermined age, and in both cases arrearages could easily accrue. Noting that the courts in prior cases had seemed to assume that a circuit court had the power to enforce its prior orders through the contempt power, this Court held that such authority existed and stated:

> In the instant case, the support order at issue was entered during the minority of the two children. The amount at issue accrued before these children reached the age of majority. The total arrearage was in fact reduced by the trial court, and defendant failed to argue that he does not owe the requested amount. [*Wasson, supra* at 96.]

In this case, the probate court determined the amount of reimbursement due while Reiswitz was still within its jurisdiction. Further, the probate court entered its amended order requiring the payment of the reimbursement while it had jurisdiction over Reiswitz and, accordingly, over Schuette. MCL 712A.2(a)(1); MSA 27.3178(598.2)(a)(1) and MCL 712A.6; MSA 27.3178(598.6). Schuette did not contest the accuracy of the amount of reimbursement when it was calculated and ordered.[3] *Wasson, supra* at 96, and the parallels between the statutes at issue in *Wasson* and this case further support our interpretation of subsection 18(2) to allow for collection of install-

---

[3] Schuette now contends on appeal that it is "unreasonable" to require that this total amount be paid back years after Reiswitz will have attained adulthood.

ment payments and arrearages after a juvenile reaches the age of nineteen.

### (3) THE AMENDMENT OF THE STATUTE

We also note that the Legislature provided, in a previous version of § 18 for the probate court's authority to impose an obligation of restitution on the juvenile as a condition of probation. The Legislature further specifically provided that the probate court could not require the payment of restitution "unless the child is or will be able to pay all or part of the restitution during the term of his or her probation." 1990 PA 314, MCL 712A.18(7)(a)(i), and (8)(a); MSA 27.3178(598.18)(7)(a)(i), and (8)(a). However, the statute was amended with regard to that provision and now states that "[a]n order of restitution entered under this section remains effective until it is satisfied in full. An order of restitution is a judgment and lien against all property of the individual ordered to pay restitution for the amount specified in the order of restitution." MCL 712A.30(13); MSA 27.3178(598.30)(13). While the restitution provisions are more specific concerning both the viability of the debt and the power of the probate court to compel payment, the fact that subsection 18(2) specifically indicates that "[t]he court shall provide for the collection of all amounts ordered to be reimbursed," coupled with the fact that subsection 18(2) addresses the collection of delinquent accounts, is a clear indication that the reimbursement section establishes a legally enforceable continuing reimbursement obligation.

### (4) AUTHORITY OF A COURT TO ENFORCE ITS ORDERS

We also note that interpreting subsection 18(2) to provide authority for the probate court to enforce orders for reimbursement that are entered while the court has jurisdiction over the juvenile and the juvenile's parents is consistent with the general proposition that a court has authority to enforce its proper orders. "When a court issues an order and that order is violated, the case returns to the court for enforcement." *People v Norman*, 183 Mich App 203, 206; 454 NW2d 393 (1989). MCL 600.611; MSA 27A.611 provides that circuit courts "have jurisdiction and power to make any order proper to fully effectuate the circuit courts' jurisdiction and judgments." Accord *Wiand v Wiand*, 178 Mich App 137, 143-144; 443 NW2d 464 (1989). Similarly, MCL 600.847; MSA 27A.847 provides that probate courts "have the same powers as the circuit court to hear and determine any matter and make any proper orders to fully effectuate the probate court's jurisdiction and decisions." The probate court had jurisdiction over the parties when it exercised its authority under subsection 18(2) to order reimbursement and thus it has the power to enforce that order. In addition, "a probate court, being a court of record, does have the contempt power, MCL 600.1416 and 600.1701(3); MSA 27A.1416 and 27A.1701(3) . . . ." *Teasel v Dep't of Mental Health*, 419 Mich 390, 417; 355 NW2d 75 (1984). Therefore, the probate court had the authority, under the statute, to issue its amended reimbursement order and additionally had the authority, under its contempt power, to enforce its proper order.

### (5) MODIFICATION

Finally, we note that, as Judge GRIFFIN pointed out in *Brzezinski*, *supra* at 680, pursuant to MCR 2.612(C)(1)(f) a parent may seek a modification of a reimbursement order. That court rule permits a court to "relieve a party . . . from a final judgment [or] order" for any "reason justifying relief from the operation of the judgment."

### F. STATUTORY CONFLICTS

Schuette argues that an interpretation of subsection 18(2) such as that discussed above would cause subsection 18(2) to conflict with MCL 712A.2, 712A.2a, and 712A.6; MSA 27.3178(598.2), 27.3178(598.2a), and 27.3178(596.6) because it would provide the probate court with continuing jurisdiction over the parties after the juvenile reaches nineteen. According to Schuette, these provisions clearly state that the probate court's jurisdiction ceases when the juvenile reaches nineteen, whereas subsection 18(2), as we construe it, would extend the probate court's jurisdiction to enforce its reimbursement order. This argument ignores the fact that the probate court entered the reimbursement order *at a time when it had jurisdiction over the parties*. The probate court calculated the total amount of reimbursement while it had jurisdiction. Thus, that total amount became a fixed obligation. Subsection 18(2) provides that "[c]ollections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a child is released or discharged from care outside the child's own home and under state or court supervision." MCL 712A.18(2); MSA 27.3178(598.18)(2). Any further involvement by a probate court therefore does not involve any exercise of jurisdiction over the juvenile or the juvenile's parent to impose new obligations or to affect the disposition of the juvenile. Rather, the

only involvement that might occur in the future would be under circumstances where the parent seeks relief from the judgment or the probate court finds it necessary to invoke its contempt power against the parent to secure compliance with the probate court's lawful order. In such circumstances, the probate court and the parent would stand as obligee and obligor to each other. Therefore, the issue would not involve the disposition of a juvenile, but rather the satisfaction of a legal obligation.[4]

### IV. THE REASONABLENESS OF THE AMENDED REIMBURSEMENT ORDER

#### A. STATEMENT OF THE ISSUE

The second issue in this matter is whether, when the probate court properly exercises its discretion to determine that reimbursement ordered pursuant to subsection 18(2) should be paid by installment payments that will continue even after the juvenile is no longer under the jurisdiction of the court, such a determination automatically renders the reimbursement "unreasonable." We hold that such a determination does not automatically render the reimbursement unreasonable.

---

[4] An interesting question in this regard arises from the *Brzezinski* decision. According to the case, the juvenile's birth date was April 6, 1979. *Brzezinski, supra* at 655. The Michigan Supreme Court finally disposed of the appeal on April 8, 1997, and remanded the case to the probate court "for redetermination of the amount of respondent's debt obligation." 454 Mich 890-891. The order of the Supreme Court was thus entered two days after the juvenile's eighteenth birthday. The *Brzezinski* decision indicates that the probate court had ordered the return of the juvenile to the appellee's custody, but it does not indicate when (or if) the probate court had relinquished jurisdiction over the juvenile. It is therefore entirely possible that the proceedings on remand occurred at a time *after* the probate court's jurisdiction over the juvenile had terminated. Nevertheless, it appears clear that the Supreme Court would have ruled that the debt obligation that arose before the termination of jurisdiction would still exist and could be revisited.

B. THE PLAIN LANGUAGE OF THE STATUTE

Subsection 18(2) provides that a probate court may order "reasonable" reimbursement for the costs of out-of-home care. This Court held in *Brzezinski, supra* at 671, that the Legislature intended "that the amount of parental reimbursement [ordered under subsection 18(2) should] be a reasonable amount, taking into account the parents' ability to pay." Here, Schuette has not challenged the overall amount of the reimbursement; in fact, Schuette stated that she agreed with the probate court's calculation. Moreover, Schuette requested that Reiswitz be placed outside the home and did not protest when the probate court changed the placement from a foster home to the DSS, which ultimately placed Reiswitz in a teaching family home.[5] Nor has Schuette argued that she was unable to afford the reimbursement that was ordered, particularly given that the installment payment schedule called for payments of only $27 a week.[6]

Instead, Schuette has argued that requiring her to pay reimbursement for years after Reiswitz became an adult was in itself "unreasonable." Schuette suggests that it is unreasonable to require that she pay the full amount of reimbursement now that her son is an adult when he "is not being required to pay for his transgression" even though he "is potentially capable of paying."[7] The upshot of Schuette's argument is that

---

[5] The foster home cost $13.85 a day while the teaching family home cost $109.94 a day.

[6] Indeed, the probate court determined the amount of reimbursement using the guidelines and model schedule created pursuant to MCL 712A.18(6); MSA 27.3178(598.18)(6), and that subsection specifically provided that the guidelines and model schedule "shall take into account both the income and resources of the child, parent, guardian, or custodian." Thus, the guidelines and model schedule appear to incorporate the reasonableness requirement of subsection 18(2).

[7] However, Schuette has acknowledged that she can be held responsible for payment of the entire amount that was due under the reimbursement schedule up until the time of Reiswitz' nineteenth birthday.

to avoid creating an obligation that would stretch unreasonably into the future, a probate court would be required either to demand a lump-sum payment of whatever reimbursement amount it had determined to be reasonable or to order an installment plan with a shorter time frame and, therefore, with significantly higher payments.[8]

In *Brzezinski* both the majority and the dissent regarded the use of the term "reasonable" in subsection 18(2) as a requirement that the probate court consider the ability of the child and the parents (or the guardian or custodian, if applicable) to pay for all or some portion of the costs of out-of-home care. This interpretation accords with the plain language of the statute: "The order shall be reasonable, taking into account both the income and resources of the child, parent, guardian, or custodian." MCL 712A.18(2); MSA 27.3178(598.18)(2).

Schuette does not argue that at the time the order was entered—or even at the present time—Reiswitz had the ability and resources to pay the required reimbursement, or even any portion of the cost of his out-of-home care. Nor does she argue that she lacked the ability and resources to pay the required reimbursement, particularly when the probate court ordered payment on an installment basis of $27 a week. Thus, we hold that the amended reimbursement order was not "unreasonable" within the meaning of the plain language of the statute.

Affirmed.

---

[8] Of course, a variant of the second alternative would be to order a significantly smaller amount of reimbursement, at the expense of the state.