*In re* JUVENILE COMMITMENT COSTS

Docket No. 206560. Submitted January 11, 2000, at Detroit. Decided April 4, 2000, at 9:05 A.M.

Matthew J. Schumacher, at sixteen years of age, pleaded guilty in the Macomb Circuit Court, Mary A. Chrzanowski, J., of unarmed robbery after originally being charged as an adult with armed robbery. The court sentenced the defendant as a juvenile, ordering that he be committed to the Department of Social Services, now the Family Independence Agency, pursuant to MCL 769.1(4); MSA 28.1072(4), and that his parents, Rodney and Sheila Schumacher, pay expenses of the defendant's juvenile confinement as determined by the Macomb County Reimbursement Office. After the defendant turned eighteen, his stepmother wrote to the court to ask why the defendant's parents continued to remain liable for the costs of the defendant's confinement. The court, on its own motion, ordered Macomb County to show cause why the defendant's parents remained liable. Following a hearing, the court decided that the liability of the defendant's parents for the costs of the defendant's confinement terminated when the defendant turned eighteen. In doing so, the court concluded that the term "juvenile," as used in MCL 769.1(7); MSA 28.1072(7), the statute pursuant to which the defendant's parents were ordered to pay the costs of the defendant's confinement, means a person under the age of eighteen, that parents cease to be legally obligated to support their children once the children turn eighteen, and that MCL 769.1(7); MSA 28.1072(7) violates parents' due process rights because parents are not given an opportunity to argue that they should not be held responsible for costs incurred in the confinement of their children once the children turn eighteen. The people and Macomb County appealed by leave granted.

The Court of Appeals *held*:

1. MCL 769.1(7); MSA 28.1072(7) provides in part that a written order of commitment of a juvenile under MCL 769.1(4); MSA 28.1072(4) to an institution or agency described in the Youth Rehabilitation Services Act, MCL 803.301 *et seq.*; MSA 25.399(51) *et seq.*, shall contain a provision for the reimbursement to the court by the juvenile or those responsible for the juvenile's support, or both, for the costs of care or service. Subsection 7 further provides that the

amount of reimbursement ordered shall be reasonable, taking into account the income and resources of the juvenile and those responsible for the juveniles' support, and that the reimbursement provision applies during the entire period the juvenile remains in care outside the juvenile's own home and under court supervision. "Juvenile," which is not defined in subsection 7, means any individual sentenced as a juvenile who remains in care outside the juvenile's own home and under court supervision. Such juvenile status continues as long as the individual remains in care outside the individual's home and under court supervision, which can be until the individual reaches age twenty-one, when the court loses jurisdiction over the individual. Thus, the defendant's parents remained liable for the reasonable costs of the defendant's confinement until the time when he was released from such confinement. The trial court, whose reliance on statutes addressing a minor's right to parental support was misplaced, erred in ruling otherwise.

2. Requiring parents of a confined juvenile who has turned eighteen to continue to pay the costs of confinement does not violate the parents' due process rights. MCL 769.1(9); MSA 28.1072(9) provides a parent who is subject to a reimbursement order both notice of the order and a hearing before an impartial judge at which the parent may raise any factors the parent wishes the court to consider in determining the appropriate amount of reimbursement. A parent may also seek a modification of the reimbursement order pursuant to MCR 2.612(C)(1)(f), which addresses relief from judgment. MCL 769.1(7); MSA 28.1072(7) requires that the reimbursement amount be reasonable, and MCL 712A.18(6); MSA 27.3178(598.18)(6) directs the State Court Administrator to establish guidelines for calculating reimbursement obligations. Such guidelines contemplate modification of reimbursement orders for changes in circumstances.

Reversed and remanded for entry of an order of reimbursement.

INFANTS — JUVENILE COMMITMENT — REIMBURSEMENT OF COSTS OF CONFINEMENT — CONFINEMENT BEYOND AGE EIGHTEEN.

A juvenile or those responsible for the juvenile's support, where ordered by a court that commits the juvenile to an institution or agency described in the Youth Rehabilitation Services Act to reimburse the reasonable cost of care or service, is liable for such reimbursement as long as the juvenile remains in care outside the juvenile's home and under court supervision; such liability does not end when the juvenile reaches eighteen years of age and may continue until the juvenile reaches age twenty-one, when the court loses jurisdiction over the juvenile (MCL 769.1[7], 803.301 *et seq.*; MSA 28.1072[7], 25.399[51] *et seq.*).

*Carl Marlinga,* Prosecuting Attorney, and *Robert J. Berlin,* Assistant Prosecuting Attorney, for the people.

*Frank Krycia,* Assistant Corporation Counsel for Macomb County.

Amicus Curiae:

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Erica Weiss Marsden,* Assistant Attorney General, for the state of Michigan

Before: ZAHRA, P.J., and SAAD and GAGE, JJ.

GAGE, J. The prosecution and intervening appellant Macomb County appeal by leave granted from the circuit court's denial of reconsideration of its order relieving intervening appellees (Rodney and Sheila Schumacher) of responsibility to reimburse intervening appellant for certain costs incurred in the juvenile confinement of defendant, Matthew J. Schumacher, the Schumachers' son. We reverse and remand.

I

At the age of sixteen, defendant pleaded guilty and was convicted of unarmed robbery, MCL 750.530; MSA 28.798. The circuit court sentenced defendant as a juvenile, ordering his commitment to the former Department of Social Services (now Family Independence Agency [FIA]) for juvenile facility placement. The court further ordered that the Schumachers must "pay expenses of [defendant's] confinement as determined by the Macomb County Reimbursement Office."

After receiving a July 1997 letter from defendant's stepmother that inquired why the Schumachers remained liable for reimbursement of the costs of defendant's care, housing, and supervision when defendant had reached eighteen years of age, the circuit court sua sponte ordered that intervening appellant's reimbursement office show cause why the Schumachers remained responsible. Intervening appellant (hereinafter Macomb County, which reference also encompasses the Macomb County Reimbursement Office) argued that MCL 769.1(7); MSA 28.1072(7) provided that the Schumachers' reimbursement responsibility should continue as long as defendant remained under the circuit court's juvenile supervision, regardless of whether defendant had reached eighteen years of age, the age of majority. Macomb County further averred that the statute reflected the common-law principle that parents remained liable to support their children who have become public charges even after those children reach the age of majority. According to Macomb County, precluding the state's right to seek parental reimbursement after a child reaches the age of eighteen would adversely affect the ability to sustain juvenile programs, thus contravening the public policy favoring accountability for the utilization of juvenile services.

The circuit court interpreted MCL 769.1(7); MSA 28.1072(7) as contemplating termination of parents' reimbursement responsibilities when their children within the juvenile system reached eighteen, indicating that statutes providing for parental liability beyond this age were unconstitutional. The court therefore ordered that the Schumachers were not responsible for costs incurred by defendant's place-

ment within the juvenile system after defendant reached eighteen years of age.

Macomb County subsequently moved for rehearing, alleging that the FIA and the State Court Administrator's Office interpreted the parents' reimbursement obligation as continuing through the time their child remained a juvenile living outside the parents' home and under court supervision. Macomb County also suggested that the circuit court's characterization of the reimbursement statute as unconstitutional was unfounded. Lastly, Macomb County argued that because MCL 769.1(7); MSA 28.1072(7) involved the state's right to parental reimbursement, not the minor child's, the age of majority statute did not apply.

The circuit court found no error with its previous ruling, providing a clearer explanation of its analysis.

> Defendant Schumacher's parents are not legally "responsible for the [defendant's] support" after defendant turned 18, and therefore, they are not responsible to Macomb County under the language of MCL 769.1(7)[; MSA 28.1072(7)] for reimbursement of costs "during the entire period [defendant] remains in care outside the juvenile's home and under court supervision" once defendant turned 18. Defendant was emancipated from his parents under MCL 722.4(2)[; MSA 25.244(4)(2)] beginning May 15, 1996. The 18 year and 19 and ½ year age ceilings of MCL 722.3a[; MSA 25.244(3a)] are inconsistent with Macomb County's position that a parent shall be ordered to pay reimbursement until their child reaches age 21, and none of the circumstances articulated in MCL 722.3a(2)  or (4)[; MSA 25.244(3a)(2) or (4)] for raising the age ceiling above 18 are or were asserted by Macomb County to support their claim. The Court further notes MCL 722[.3(1); MSA 25.244(3)(1)] provides that a court "*may*" order child support for a child over 18 years of age, and *only* after meeting specific criteria. No such order has ever entered.

> Further, MCL 722.52; MSA 25.244(52), being part of the Age of Majority Act of 1971, provides that, "notwithstanding any other provision of law to the contrary," a person turning age 18 after January 1, 1972 is "an adult of legal age for all purposes whatsoever" except as provided by "the state constitution of 1963" and MCL 722.52(2)[; MSA 25.244(52)(2)].

> \* \* \*

> Conspicuous by its absence [within MCL 722.52(2); MSA 25.244(52)(2)] is any reference to MCL 769.1[; MSA 28.1072]. As set forth herein, "[S]ections 722.1 to 722.6 of the Michigan Compiled Laws" do not require defendant's parents' to support him after age 18. MCL 722.52(2)[; MSA 25.244(52)(2)] supersedes any arguable requirement under MCL 769.1(7) [; MSA 28.1072(7)] for defendant's parents to support him through reimbursement payments beyond his reaching age 18.

> . . . MCL 722.52(2)[; MSA 25.244(52)(2)], "notwithstanding any other provision of law to the contrary," now supersedes th[e] common law doctrine, providing no support for the position that MCL 769.1(7)[; MSA 28.1072(7)] requires a parent to support their child through reimbursement after the child becomes emancipated under law.

The trial court further explained that it had not previously determined the reimbursement statute unconstitutional, but only found a procedural due process problem with Macomb County's interpretation of MCL 769.1(7); MSA 28.1072(7) because this subsection failed to furnish the Schumachers any opportunity to challenge their continuing reimbursement liability. Accordingly, the trial court denied Macomb County's motion for reconsideration.

On November 30, 1998, this Court granted the prosecution and Macomb County leave to appeal.

II

A

Appellants argue that the reimbursement statute clearly provides that parents owe a continuing reimbursement obligation as long as their juvenile child lives outside the parents' home and under court supervision. The circuit court effectively viewed a juvenile as someone who had not yet reached eighteen years of age. MCL 769.1(7);  MSA 28.1072(7) states in relevant part as follows:

> If a juvenile is committed under subsection (3) or (4) to an institution or agency described in the youth rehabilitation services act, 1974 PA 150, MCL 803.301 to 803.309, the written order of commitment shall contain a provision for the reimbursement to the court by the juvenile or those responsible for the juvenile's support, or both, for the cost of care or service. The amount of reimbursement ordered shall be reasonable, taking into account both the income and resources of the juvenile and those responsible for the juvenile's support. . . . The reimbursement provision applies during the entire period the juvenile remains in care outside the juvenile's own home and under court supervision. The court shall provide for the collection of all amounts ordered to be reimbursed, and the money collected shall be accounted for and reported to the county board of commissioners. Collections to cover delinquent accounts or to pay the balance due on reimbursement orders may be made after a juvenile is released or discharged from care outside the juvenile's own home and under court supervision.

Issues of statutory interpretation represent questions of law that we review de novo. *Oakland Co Bd of Co Rd Comm'rs v Michigan Property & Casualty Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998).

The primary rule of statutory construction is to determine and effectuate the intent of the Legislature.

*Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). The starting point in every case involving construction of statutes is the statutory language itself. *House Speaker v State Administrative Bd,* 441 Mich 547, 567; 495 NW2d 539 (1993). We presume that the Legislature intended the meaning it has plainly expressed. *Nation v W D E Electric Co,* 454 Mich 489, 494; 563 NW2d 233 (1997). When statutory language is clear and unambiguous, judicial construction or interpretation is unnecessary and therefore precluded. *Lorencz v Ford Motor Co,* 439 Mich 370, 376; 483 NW2d 844 (1992). When reasonable minds can differ concerning the meaning of a statute, however, judicial construction is appropriate. *Heinz v Chicago Rd Investment Co,* 216 Mich App 289, 295; 549 NW2d 47 (1996). The construing court must look to the object of the statute in light of the harm it is designed to remedy, and apply a reasonable construction that will best accomplish the Legislature's purpose. *Marquis v Hartford Accident & Indemnity (After Remand),* 444 Mich 638, 644; 513 NW2d 799 (1994). Nothing may be read into the statute that is not within the manifest intent of the Legislature as gathered from the act itself. *In re S R,* 229 Mich App 310, 314; 581 NW2d 291 (1998).

B

Pursuant to the Juvenile Code, MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.*, the family division of a circuit court (family court) generally possesses exclusive jurisdiction over juveniles under seventeen years of age who commit criminal offenses. MCL 712A.1(1)(c), 712A.2;     MSA 27.3178(598.1)(1)(c), 27.3178(598.2); *People v Conat,* 238 Mich App 134,

139; 605 NW2d 49 (1999).[1] Family court proceedings involving a juvenile charged with a crime may conclude with a dismissal of the petition against the juvenile, the family court's issuance of a warning to the juvenile, placement of the juvenile on in-home probation or in foster care, or the juvenile's commitment to the FIA and a state institution described within the Youth Rehabilitation Services Act (YRSA), MCL 803.301 *et seq.*; MSA 25.399(51) *et seq.*, among other potential dispositions. MCL 712A.18(1); MSA 27.3178(598.18)(1).

The circuit court has personal jurisdiction over juveniles charged with certain enumerated offenses, however, assuming the prosecutor authorizes a complaint and warrant in the circuit court. *People v Veling*, 443 Mich 23, 30-31; 504 NW2d 456 (1993); *Conat, supra* at 139-142. "The circuit court has jurisdiction to hear and determine a specified juvenile violation if committed by a juvenile 14 years of age or older and less than 17 years of age." MCL 600.606(1); MSA 27A.606(1). The specified juvenile violations include armed robbery, MCL 750.529; MSA 28.797, its lesser included offenses, and any other charges arising from the same transaction. MCL 600.606(2)(a), (h), (i); MSA 27A.606(2)(a), (h), (i). With respect to juveniles charged as adults and found guilty of the charged offenses, MCL 769.1; MSA 28.1072 governs the circuit court's imposition of sentence. Unless sentencing as an adult is required, MCL 769.1(1); MSA 28.1072(1), the circuit court may order the juvenile's commitment to a state institution pursuant to the YRSA. MCL 769.1(3), (4); MSA 28.1072(3), (4).

---

[1] Family court proceedings involving a juvenile generally do not constitute criminal proceedings. MCL 712A.1(2); MSA 27.3178(598.1)(2).

In this case, the circuit court possessed personal jurisdiction over defendant because the prosecutor in 1994 authorized a complaint and warrant charging the then sixteen-year-old defendant with armed robbery. The prosecutor subsequently added a count of unarmed robbery, MCL 750.530; MSA 28.798, to which defendant pleaded guilty in exchange for the prosecutor's dismissal of count one. Accordingly, MCL 769.1; MSA 28.1072 governed the circuit court's imposition of defendant's sentence for unarmed robbery. *Veling, supra* at 42-43 ("[C]ircuit courts have jurisdiction to sentence juveniles charged with enumerated offenses, but convicted of nonenumerated included offenses, and to try and sentence juveniles charged with both enumerated and nonenumerated offenses arising out of the same criminal transaction."). The circuit court, with the agreement of defendant and the prosecutor, ordered defendant's commitment to an institution described in the YRSA. MCL 769.1(4);  MSA 28.1072(4).

C

The clear language of MCL 769.1(7);  MSA 28.1072(7) mandates that the circuit court, having committed a juvenile to the FIA and having institutionalized the juvenile pursuant to MCL 769.1(4); MSA 28.1072(4), order that the juvenile or those responsible for his support reimburse the court for the costs of any care or services that the juvenile receives. The language of MCL 769.1(7); MSA 28.1072(7) also clearly and unambiguously explains that reimbursement shall be ordered as long as the juvenile resides outside his home and remains under court supervi-

sion.[2] The term "juvenile" is not specifically defined in terms of any age limitations within MCL 769.1(7); MSA 28.1072(7), but appears to refer to any individual sentenced as a juvenile who remains under court supervision. According to the seemingly clear language of the reimbursement requirement of MCL 769.1(7); MSA 28.1072(7), the Schumachers' reimbursement obligation would include all services defendant received in care outside his home until he reached the age of twenty-one, the age at which the circuit court's order provided for termination of its jurisdiction over defendant.

The contemplation that one's juvenile status, and consequently the reimbursement obligation of those responsible for the juvenile's support, may continue until one attains twenty-one years of age is consistent with a subsequent, related statutory provision concerning juvenile probation. MCL 769.1b(1); MSA 28.1073(1)(1) requires that after the circuit court places a juvenile on probation and commits him to an institution described in the YRSA, MCL 769.1(3), (4); MSA 28.1072(3), (4), the court must hold a hearing "to determine whether the juvenile has been rehabilitated and whether the juvenile presents a serious risk to public safety." Subsection 2 demands that a review hearing be held before *"the juvenile's nineteenth*

---

[2] See *In re Reiswitz*, 236 Mich App 158, 167; 600 NW2d 135 (1999) ("The plain language of subsection 18(2) [MCL 712A.18(2); MSA 27.3178(598.18)(2), the Juvenile Code's very similar provision requiring reimbursement by the juvenile or his parents or guardians for care, services or supervision received by the juvenile] is that probate courts may order and collect reimbursement for the costs incurred by the state when out-of-home placement is ordered."). As we will observe later in the text, the Juvenile Code and provisions in MCL 769.1; MSA 28.1072 addressing the disposition of juvenile offenders relate to the same subject and contain similar provisions that should be considered with reference to each other.

*birthday.* . . . or, if the court has continued jurisdiction under subsection (1), at any time before the juvenile becomes 21 years of age." MCL 769.1b(2); MSA 28.1073(1)(2). References in § 1b to juveniles between the ages of nineteen and twenty-one plainly contradict the circuit court's determination that "juvenile" must designate an individual who has not yet reached age eighteen.

D

To the extent that the trial court viewed the reference in MCL 769.1(7); MSA 28.1072(7) to "juvenile" as ambiguous, we note that a consideration of other related statutes and relevant legislative history undermines the circuit court's interpretation of juvenile as limited to individuals younger than eighteen years. Further support for the notion that the term juvenile encompasses individuals between the ages of eighteen and twenty-one exists within the Juvenile Code, MCL 712A.1 *et seq.*; MSA 27.3178(598.1) *et seq.*

> [W]hen this Court construes two statutes that arguably relate to the same subject or share a common purpose, the statutes are in pari materia and must be read together as one law, even if they contain no reference to one another and were enacted on different dates. The object of the in pari materia rule is to give effect to the legislative purpose as found in harmonious statutes. If statutes lend themselves to a construction that avoids conflict, then that construction should control. [*People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998) (citations omitted).]

To the extent that both the Juvenile Code and MCL 769.1; MSA 28.1072 address the disposition of criminal charges against individuals aged between fourteen and seventeen, they should be read together.

MCL 712A.2a; MSA 27.3178(598.2a) explicitly provides for family court jurisdiction over a juvenile that continues after the juvenile reaches the age of eighteen:

> (1) Except as otherwise provided in subsection (2), if the court has exercised jurisdiction over a juvenile under section 2(a) or (b) of this chapter, jurisdiction shall continue for a period of 2 years beyond the maximum age of jurisdiction conferred under section 2 of this chapter, unless the juvenile is released sooner by court order.
>
> (2) If the court has exercised jurisdiction over a juvenile under section 2(a)(1) of this chapter for an offense that, if committed by an adult, would be a violation or attempted violation of section . . . 529, . . . 530 . . . of the Michigan penal code . . ., jurisdiction may be continued under section 18d of this chapter until the juvenile is 21 years of age.
>
> (3) If the court exercised jurisdiction over a child under section 2(h) of this chapter, jurisdiction of the court continues until the order expires but action regarding the personal protection order after the respondent's eighteenth birthday shall not be subject to this chapter.
>
> (4) This section does not apply if the juvenile is sentenced to the jurisdiction of the department of corrections.
>
> (5) As used in this chapter, "child", "juvenile", "minor", or any other term signifying a person under the age of 18 applies to a person 18 years of age or older concerning whom proceedings are commenced in the court under section 2 of this chapter and over whom the court has continuing jurisdiction pursuant to subsections (1) and (3).

This statutory language clearly reflects that one's status as a juvenile does not depend in every case on whether the individual in question has reached the age of majority. The language within MCL 712A.2a(1), (2); MSA 27.3178(598.2a)(1), (2) parallels the requirement of MCL 769.1b(2); MSA 28.1073(1)(2) that the court with supervision over a convicted juvenile

maintain that oversight until the juvenile reaches nineteen or twenty-one years of age.

Legislative history behind both MCL 712A.2a; MSA 27.3178(598.2a) and MCL 769.1; MSA 28.1072 also supports (i) our interpretation of the use in MCL 769.1(7); MSA 28.1072(7) of the term "juvenile" with reference to the Juvenile Code and (ii) our conclusion that the Legislature intended in some instances that juvenile status continue until age twenty-one. Faced with a perceived ambiguity regarding the significance of the term "juvenile" within MCL 769.1(7); MSA 28.1072(7), we appropriately may consider the statute's legislative history. *People v Hall*, 391 Mich 175, 191; 215 NW2d 166 (1974). The reimbursement provision of MCL 769.1(7); MSA 28.1072(7) was enacted in 1988. The relevant legislative history with respect to the reimbursement provision stated as follows:

> Senate Bill 609 would amend the Code of Criminal Procedure to accommodate the criminal court's disposition of a juvenile who had been found guilty of any of the designated serious felonies. At sentencing, the court would hold a hearing to determine whether the best interests of the juvenile and the public would be served by committing him or her to the DSS or by imposing any other sentence provided by law for an adult offender. . . .
>
> The court could waive the sentencing hearing if if [sic] the prosecutor and the defendant consented, but if it did so, it could not sentence the defendant as an adult offender. If the court ordered commitment to the DSS, it would order reimbursement to the DSS from those responsible for the juvenile. *Reimbursement provisions would parallel those in the juvenile code.* Reimbursement for the costs of court-ordered legal representation also would be as provided in the juvenile code.
>
> The court would retain jurisdiction over a juvenile placed on probation and committed to the DSS, and would annually review that juvenile's placement and progress, using an

annual report to be prepared by the DSS under the Juvenile Facilities Act to be created by Senate Bill 601. The court could order changes in placement or the treatment plan based on the review.

> *As near as possible to the juvenile's nineteenth birthday, the court would conduct a review hearing to determine whether the juvenile had been rehabilitated and whether the juvenile presented a serious risk to public safety. If the juvenile had not been rehabilitated or presented a serious risk to public safety, the court's jurisdiction would continue.* [House Legislative Analysis, HB 4731 *et al*, July 26, 1988, at 3-4  (emphasis added).]

This language reveals the legislative intent that the reimbursement provision of MCL 769.1(7); MSA 28.1072(7) parallel the reimbursement provision within the Juvenile Code,[3] which, pursuant to MCL 712A.2a; MSA 27.3178(598.2a), may apply to juveniles beyond the age of eighteen. The legislative history further reveals that the Legislature there referred to juveniles older than eighteen.

Even more compelling legislative history exists that establishes the legislative objective to "extend the age of continuing jurisdiction for the juvenile court from age 19 to age 21 for youths who had committed cer-

---

[3] The reimbursement provision of the Juvenile Code appears at MCL 712A.18(2); MSA 27.3178(598.18)(2), and provides in relevant part as follows:

> An order of disposition placing a juvenile in or committing a juvenile to care outside of the juvenile's own home and under state, county juvenile agency, or court supervision shall contain a provision for reimbursement by the juvenile, parent, guardian, or custodian to the court for the cost of care or service. The order shall be reasonable, taking into account both the income and resources of the juvenile, parent, guardian, or custodian. . . . The reimbursement provision applies during the entire period the juvenile remains in care outside of the juvenile's own home and under state, county juvenile agency, or court supervision, unless the juvenile is in the permanent custody of the court.

tain offenses, . . . . [and to extend t]he criminal court's jurisdiction over a juvenile it committed to the [FIA] . . . similarly . . . to age 21." House Legislative Analysis, *supra* at 2. As we have already observed, §§ MCL 769.1, 769.1b; MSA 28.1072, 28.1073(1) and the Juvenile Code address jurisdiction over and disposition of juvenile offenders, and are therefore related. Accordingly, we find it instructive to consider the available legislative history concerning MCL 712A.2a; MSA 27.3178(598.2a).[4] *Webb, supra; Hall, supra.*

> The juvenile court's jurisdiction generally ends at age seventeen. However, when the court has exercised its jurisdiction, it may retain it until the youth turns 19. *House Bill 4750 would allow the court to retain jurisdiction to age 21 for delinquents who committed any of the designated serious felonies or any of the following: . . . unarmed robbery.*
>
> The juvenile court would retain jurisdiction over juveniles who had committed felonies and were committed to a juvenile facility, irrespective of whether the facility was a state facility . . . . As of June 1, 1991, the court would retain jurisdiction over all adjudicated delinquents. The court would annually review the juvenile's placement and progress, and could order changes in the juvenile's placement or treatment plan. A juvenile could be released only with the approval of the court.
>
> Generally a delinquent committed to a state facility would continue to be automatically released at age 19. However, *for those juveniles who had committed offenses for which the court could retain jurisdiction until age 21, the court would conduct a review hearing as close as pos-*

---

[4] The above-quoted legislative history regarding MCL 769.1, 769.1b; MSA 28.1072, 28.1073(1) and the now cited legislative history regarding MCL 712A.2a; MSA 27.3178(598.2a) belonged to a package of interrelated bills aimed at addressing the rising numbers of "hardened juvenile offenders." House Legislative Analysis, *supra* at p 1. Enacted in 1988, the package, among other things, created the automatic waiver statute, thus divesting probate courts of exclusive jurisdiction over juveniles and vesting in the circuit courts personal jurisdiction over juveniles charged with enumerated life offenses. *Veling, supra* at 30-31.

*sible to the juvenile's nineteenth birthday.* If the court determined that the juvenile had not been rehabilitated or presented a serious risk to public safety . . . the court would continue its jurisdiction over the juvenile. *In making its determinations, the court would consider the same factors weighed by the criminal court under Senate Bill 609* [*cited above*]. *Provisions for notice, appointment of counsel, and commitment reports would parallel those in Senate Bill 609.* [House Legislative Analysis, *supra* at 4 (emphasis added).]

Besides reinforcing our observation that the Juvenile Code and the provisions in MCL 769.1, 769.1b; MSA 28.1072, 28.1073(1) concerning juveniles relate to the same subject and should be harmonized to the extent possible, *Webb, supra*, this legislative history removes any inherent ambiguity regarding whether use of the term "juvenile" in MCL 769.1(7); MSA 28.1072(7) contemplates an individual younger than eighteen.

Because we find it clear from references to "juvenile" in the Juvenile Code and from the legislative history's extension of potential juvenile status to the age of twenty-one that a juvenile may be an individual beyond the age of eighteen, we reject the trial court's analysis to the extent that it presumed that reference to "juvenile" in MCL 769.1(7); MSA 28.1072(7) necessarily implied an individual below the age of eighteen. The instructions in MCL 769.1(7); MSA 28.1072(7) with respect to reimbursement clearly and unambiguously require a circuit court committing a juvenile pursuant to the YRSA to order that the juvenile, the individuals responsible for his support, or both must reimburse the court to some extent for the care and services the juvenile receives. The circuit court thus correctly ordered, at the time defendant was placed pursuant to the YRSA, reimbursement by defendant's parents. Subsection 1(7) continues, explaining that

"[t]he reimbursement provision applies during the entire period the juvenile remains in care outside the juvenile's own home and under court supervision." In light of our resolution of the perceived ambiguity regarding the import of "juvenile" within MCL 769.1(7); MSA 28.1072(7), this subsection clearly and unambiguously mandates that defendant's and the Schumachers' reimbursement responsibility encompass (at least a portion of) costs and services received by defendant at any point during the period that defendant resides "outside [his] own home and under court supervision," irrespective of whether at the time defendant received the services he was older than age eighteen. We therefore conclude that the circuit court erred in terminating the Schumachers' liability to reimburse the court for any costs defendant incurred as a state ward after he attained age eighteen.

E

We note that the circuit court, in determining that the Schumachers could not be held responsible for costs and services defendant received after his eighteenth birthday, misplaced its reliance on statutes addressing minors' rights to parental support, which are inapposite to the instant case. The circuit court reasoned that the Schumachers were not responsible for reimbursement of costs and services defendant received after he reached eighteen because pursuant to MCL 722.3(1), 722.3a, 722.4(2), and 722.52(1), (2); MSA 25.244(3)(1), 25.244(3a), 25.244(4)(2), and 25.244(52)(1), (2), parents are generally relieved of any responsibility to support their children when those children reach eighteen years of age. All the

provisions cited by the circuit court focus on the child's right to receive support at times when the child cannot reasonably be expected to provide for himself. The Legislature determined that in most instances this period of dependency should end at age eighteen.

In the instant case, however, the extent of defendant's right to receive support from the Schumachers is not at issue. This case focuses on the state's and Macomb County's statutory entitlement to receive reimbursement from the Schumachers for the expenditures incurred by the state and Macomb County in attempting to rehabilitate and supervise the Schumachers' juvenile offender child. "There is no dispute that the purpose of this statute is to obligate parties to help shoulder the costs the state incurs during the period that a [juvenile] is ordered into out-of-home placement." *In re Brzezinski*, 214 Mich App 652, 676-677; 542 NW2d 871 (1995) (GRIFFIN, J., dissenting, referring to the similar reimbursement provision of MCL 712A.18[2]; MSA 27.3178[598.18][2]), rev'd "for the reasons stated by the dissenting judge," 454 Mich 890 (1997). Whereas a minor child's right to and need for support generally evaporates in the eyes of the law when the minor reaches eighteen years of age, the same cannot be said with respect to the state's and Macomb County's needs for and rights to contribution from the Schumachers. As the Legislature clearly explained within MCL 769.1(7); MSA 28.1072(7), the state's and Macomb County's right to reimbursement exists throughout the period defendant remains a juvenile receiving services and court oversight while residing outside his home. An interpretation of the reimbursement provision as limiting parental contributions to some portion of the services

the juvenile received before his eighteenth birthday would seemingly deprive the state and counties of a significant source of income, perhaps endangering the state's and the counties' abilities to provide meaningful rehabilitative services to juveniles between eighteen and twenty-one.[5] Such an interpretation also ignores the common-law principle that parents may remain liable for the expenses incurred in supporting their children who have attained the age of majority when these children become public charges, *Smith v Smith*, 433 Mich 606, 655-656; 447 NW2d 715 (1989) (CAVANAGH, J., dissenting); *Stilson v Gibbs*, 53 Mich 280, 282; 18 NW 815 (1884); *Parrish v Parrish*, 138 Mich App 546, 556, n 2; 361 NW2d 366 (1984). *B & B Investment Group v Gitler*, 229 Mich App 1, 7; 581 NW2d 17 (1998) ("The language of a statute should be read in light of previously established rules of the common law, including common-law adjudicatory principles.").

III

Appellants also challenge the circuit court's sua sponte determination that an interpretation of MCL 769.1(7); MSA 28.1072(7) requiring parental reimbursement for expenses incurred by the juvenile until he reaches age twenty-one violates the parents' procedural due process rights because subsection 7 "provides no procedure for parents to have a meaningful

---

[5] We note that to subsidize their provisions of services to inmates and prisoners sentenced as adults, county jails and the Department of Corrections have been empowered by the Legislature to seek reimbursement of the expenses they incur in caring for these inmates and prisoners. See the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq.*; MSA 28.1701 *et seq.*, and the Prisoner Reimbursement to the County Act, MCL 801.81 *et seq.*; MSA 28.1770(1) *et seq.*

opportunity to show why they are not liable for *any* 'reasonable' costs associated with their child's support after the child has become emancipated by operation of law." Though the court used the term "procedural due process" within its decision, it appears that the court's constitutional analysis in fact continued to take issue with the fact that the statute holds a parent responsible for reimbursement even after the juvenile reaches the age of eighteen. A statute is not unconstitutional, however, merely because it is allegedly undesirable, unfair, or unjust. *Doe v Dep't of Social Services*, 439 Mich 650, 681; 487 NW2d 166 (1992). Arguments that a statute is unwise or results in bad policy should be addressed to the Legislature. *People v Kirby*, 440 Mich 485, 493-494; 487 NW2d 404 (1992).

Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker. The opportunity to be heard requires a hearing to allow a party the chance to know and respond to the evidence. *Traxler v Ford Motor Co*, 227 Mich App 276, 288; 576 NW2d 398 (1998). Statutes are presumed to be constitutional, and courts must construe a statute as constitutional unless its unconstitutionality is clearly apparent. *In re Ayres*, 239 Mich App 8; 608 NW2d 132 (1999). This Court reviews constitutional issues de novo. *People v Houstina*, 216 Mich App 70, 73; 549 NW2d 11 (1996).

We find that the imposition on parents of a reimbursement obligation for costs and services their juvenile child incurs after reaching eighteen pursuant to MCL 769.1(7); MSA 28.1072(7) does not deprive the parents of procedural due process. We first note that MCL 769.1(9); MSA 28.1072(9) provides that a reimbursement order "is not binding on the person

[responsible] unless an opportunity for a hearing has been given and until a copy of the order is served on the person." Subsection 9 thus clearly and unambiguously provides anyone subject to a reimbursement order both notice of the order and a hearing before an impartial judge at which the party may raise any factors it wishes the court to consider in determining the appropriate amount of reimbursement.

Apart from this statutory notice and hearing requirement, the court rules also afford a party responsible for reimbursement an avenue for advising the court of any changed circumstances affecting the party's ability to pay. In *Brzezinski, supra* at 679-680, Judge GRIFFIN's dissent rejected a circuit court's conclusion that a probate court's order should be invalidated on the basis that the respondent's continuing reimbursement obligation would not be modifiable. According to Judge GRIFFIN, "respondent would have been able to seek a modification of the [final] judgment through MCR 2.612(C)(1)(f), which provides, in pertinent part, that a court may relieve a party of a final judgment for any 'reason justifying relief from the operation of the judgment.' " See also *In re Reiswitz*, 236 Mich App 158, 173; 600 NW2d 135 (1999), citing Judge GRIFFIN's discussion of MCR 2.612(C)(1)(f). Although Judge GRIFFIN's analysis, which the Supreme Court adopted, addressed a reimbursement order enacted pursuant to MCL 712A.18(2); MSA 27.3178(598.18)(2), we find the analysis equally applicable to a reimbursement order enacted pursuant to the very similar reimbursement provisions of MCL 769.1(7); MSA 28.1072(7).

We also note that MCL 769.1(7); MSA 28.1072(7) states that "[t]he amount of reimbursement ordered shall be reasonable, taking into account both the

income and resources of the juvenile and those responsible for the juvenile's support. The amount may be based upon the guidelines and model schedule prepared under . . . [MCL 712A.18(6); MSA 27.3178 (598.18)(6)]." MCL 712A.18(6); MSA 27.3178(598.18)(6) directs the state court administrator, "under the supervision and direction of the supreme court and in consultation with the family independence agency and the Michigan probate judges association," to create guidelines on which courts may base their calculations of reimbursement obligations. These guidelines contemplate that on the basis of changed circumstances a party may seek modification of his reimbursement obligation.[6]

---

[6] The guidelines state as follows:

4. Amendment of the Order

Changed circumstances may result in a need to amend the order of reimbursement. The affected party(ies) or a representative of the court may request reconsideration of the order. The Motion and Order (JC 15), is used to request opportunity to be heard on changed circumstances.

The judge should make it clear to the affected parties at disposition that the order can amended, and by whom. Because the court often discovers financial information after entry of the order of disposition, there must be flexibility for adjustments based on new information. The parent, guardian or custodian can request changes in the order based on changes in income or circumstances. In either case, the court should require completion of a revised Financial Statement (JC 34), with instructions that the changes be noted. The revised statement should be clearly marked and dated to distinguish it from previous statements.

The court can include a provision in the original order of reimbursement requiring the parent, guardian or custodian to notify the Court of any increase or decrease in income within 7 days of occurrence. The Court should also reserve the right to amend the order if the party fails to notify the Court.

5. Review of the Order

The court can, at any time, order a review of the parent, guardian or custodian's compliance with the order of reimbursement. Notice must [be] given for hearing.

Because we find no support for the circuit court's conclusion that the reimbursement provisions within MCL 769.1; MSA 28.1072 do not provide a party subject to a reimbursement order a meaningful opportunity to argue that they should not be responsible for costs incurred by the juvenile between the ages of eighteen and twenty-one, we reject the circuit court's constitutional observations with respect to MCL 769.1(7); MSA 28.1072(7).

Reversed and remanded for entry of an order, pursuant to MCL 769.1(7); MSA 28.1072(7), requiring that the Schumachers reimburse the court for a reasonable amount of the costs incurred by defendant while in the care of the state and under court supervision. The order should include reasonable reimbursement of appropriate costs incurred by defendant from the time of his commitment in May 1995 to the time of his discharge as a state ward in November 1998, irrespective of whether defendant was eighteen years of age or older at the time he received the juvenile services. We do not retain jurisdiction.

---

If the court order's reimbursement of the full cost-of-care/service with an interval payment amount, a review should be required prior to the release of the child from the court's jursidiction. This review provides an opportunity for the Judge to look at compliance with the order, payment history, arrearge, enforcement efforts need and other factors. The court can then determine whether to:

1. Forgive the entire debt
2. Forgive any part of the debt
3. Continue the original/last order as entered
4. Seek voluntary or involuntary wage assignment
5. Amend the existing order. [State Court Administrative Office Guidlines for Court Ordered Reimbursement and Procedures for Reimbursement Program Operations, October 1990, pp 12-13.]