*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOLVERINE MUTUAL INSURANCE
COMPANY,

UNPUBLISHED
June 8, 2023

Plaintiff/Counterdefendant-Appellee,

v

No. 359339
Kent Circuit Court

MATHEW VAN DYKEN, also known as
MATTHEW VAN DYKEN,

LC No. 20-008381-CK

Defendant,

and

MARY FREE BED REHABILITATION
HOSPITAL, and TRINITY HEALTH MICHIGAN-
MERCY HEALTH ST MARY'S, formerly known as
MERCY HEALTH SERVICES,

Defendants/Counterplaintiffs-
Appellants.

Before: GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Wolverine Mutual Insurance Company rescinded a no-fault policy it had issued to Mathew
Van Dyken after Van Dyken was seriously injured in a motor vehicle accident. The circuit court
granted summary disposition in Wolverine's favor, determining that Van Dyken's material
misrepresentation in the application process supported rescission. We affirm.

## I. BACKGROUND

In September 2018, Van Dyken applied for a Wolverine no-fault policy with the assistance
of an independent insurance agent, Craig Terpstra. Question seven in the application's general

information section asked: "Anyone arrested or convicted for other than traffic violation in the last 5 years?" Van Dyken did not answer this question or three others, but he and Terpstra signed and submitted the application anyway. Immediately above the signature line was the "applicant's statement," attesting "that the facts in this Application are true" and acknowledging, "In the event of any misrepresentation or concealment made by me or with my knowledge in connection with this Application, the Company may deem this binder and any policy . . . issued in reliance upon this Application void from its inception." A few days after Terpstra submitted the application on Van Dyken's behalf, a Wolverine employee e-mailed Terpstra and asked for the missing four answers. Six minutes later, Terpstra replied that the answer to these questions was "no."

Van Dyken's Wolverine policy was in effect when he was injured in a one-car motor vehicle accident in August 2020. Van Dyken received medical treatment for his injuries at Trinity Health Michigan-Mercy Health St. Mary's and Mary Free Bed Rehabilitation Hospital (the providers). The providers submitted their invoices to Wolverine for payment.

During Wolverine's investigation of Van Dyken's claim, it discovered that Van Dyken had pleaded guilty to receiving and concealing a stolen motor vehicle in 2015. At the plea hearing, Van Dyken admitted that he was "in possession of a stolen 2003 Chevy van." Wolverine informed Van Dyken that it was rescinding his insurance policy and denying his claim for first-party benefits because he had misrepresented that he did not have any convictions other than traffic violations during the five years before he applied for insurance.

Wolverine then filed a declaratory judgment action seeking "judgment confirming the rescission of the auto insurance policy in this matter." In their special and affirmative defenses, the providers asserted that Wolverine's "underwriting rules, as applied in this case, violated MCL 500.2118 and/or MCL 500.2119."[1] The providers also filed a counter-complaint seeking payment of their claims and a declaratory judgment that Van Dyken's policy was in full force and effect.

During discovery, the providers asked Wolverine to "[a]dmit that a criminal conviction for receiving and concealing stolen property contrary to MCL 750.535(7) cannot form the basis for an automobile insurance underwriting rule under MCL 500.2118." Wolverine responded that it was exempted from compliance with MCL 500.2118 and other underwriting statutes.[2] It presented documentation from the Department of Insurance and Financial Services (DIFS) confirming its exemption since 1980. However, Wolverine did provide its in-house underwriting rules during

---

[1] MCL 500.2101 *et seq*. is known as the essential insurance act. The act provides that because no-fault insurance is mandatory in Michigan, insurers must provide services for paying "eligible person[s]." MCL 500.2118(1). The act provides guidelines for assessing the eligibility of an individual and outlines the conditions that justify denying an application or terminating a policy. It also sets forth factors for assessing rates based on risk. Insurance companies draft rules for underwriting insurance based on the act's requirements. See *Ins Institute of Mich v Comm'r of the Office of Fin & Ins Servs*, 486 Mich 370, 386-387; 785 NW2d 67 (2010); *Allstate Ins Co v Mich Dep't of Ins*, 195 Mich App 538, 540; 491 NW2d 616 (1992); *Flumignan v Detroit Auto Inter-Ins Exch*, 131 Mich App 121, 123-125; 345 NW2d 910 (1983).

[2] MCL 500.2129 exempts "from the provisions of this chapter" applicable small-volume insurers.

discovery. "Rule 2. Ineligible Risks" states that Wolverine need not issue or renew a policy covering a person "[c]onvicted of a 'Major Violation' in the preceding five (5) years." The definition of "Major Violation" under Rule 2 includes convictions for many specific offenses, but also more generally, "[a] felony involving the use of a motor vehicle."

During discovery, the providers deposed David Peterson, Wolverine's vice president of claims and general counsel. Peterson testified that Wolverine has a separate underwriting department but that he has "personal knowledge" of "the underwriting rules and standards that Wolverine uses to write auto policies." Peterson explained that Van Dyken's conviction for receiving or concealing a stolen motor vehicle was a "major violation," falling in the category of "[a] felony involving the use of a motor vehicle." Had this conviction been revealed, Peterson asserted, Wolverine would not have granted his application.

Wolverine and the providers filed competing motions for summary disposition under MCR 2.116(C)(10). Wolverine asserted that it was entitled to summary disposition because it had validly rescinded Van Dyken's insurance policy. Specifically, Wolverine relied on Peterson's deposition testimony that Wolverine would not have granted Van Dyken's insurance application had it been aware of Van Dyken's prior conviction. The providers asserted that Van Dyken's conviction of receiving and concealing a stolen motor vehicle was not a "major violation" and Van Dyken's failure to disclose it was not a material misrepresentation. Wolverine's underwriting guidelines define a major violation as a "felony involving the *use* of a motor vehicle." The providers described Van Dyken's conviction as based on possession, not use. Accordingly, they contended that Wolverine lacked grounds to rescind the policy. Wolverine retorted that it was exempt from the essential insurance act and, in any event, its underwriting guidelines were not part of the insurance contract. As such, it could deny coverage based on other misrepresentations in the application.

The circuit court granted summary disposition in Wolverine's favor in a lengthy opinion and order. The court concluded that Van Dyken had made a material misrepresentation in his insurance application. The court reasoned:

> [Peterson] has testified that, pursuant to Wolverine's underwriting guidelines, Wolverine would not have issued the policy had it known of the undisclosed conviction. In response, [the providers] essentially argue[] that Peterson misinterprets Wolverine's guidelines. The Court is unaware, however, of any Michigan case in which the Court has analyzed an insurer's agent's interpretation of its own underwriting guidelines in determining whether the insurer would not have issued the policy. Rather, courts have considered an insurer's statement that it would not have issued the policy had it known of the undisclosed information as sufficient to establish that the misrepresentation was material. See [*Lash v Allstate Ins Co*, 210 Mich App 98, 103-104; 532 NW2d 869 (1995).] Accordingly, the Court accepts Mr. Peterson's statement as sufficient to establish that Van Dyken's misrepresentation was material.

The court further noted that "Peterson's interpretation of the underwriting guidelines was not unreasonable."

The court then analyzed the providers' argument that "because rescission is an equitable remedy, the court must weigh the equities before granting rescission, and that the equities do not weigh in favor of rescission." However, the circuit court held, such balancing is only done when the challenging party is an innocent third party. The providers' rights to benefits flowed from Van Dyken's position as the insured. "Neither party now argues that Van Dyken is an innocent third party." Therefore, the court determined, "a balancing of the equities is not required in this case."

Finally, the court noted that the providers had not addressed, let alone attempted to establish, that Van Dyken's misrepresentation was not fraudulent. Rather, they attempted to shift the blame for the fraudulent misrepresentation onto Terpstra, the independent insurance agent. The blame could not be shifted, the court held, because an independent agent is an agent of the insured, not the insurer. Any statement made by Terpstra to Wolverine could be attributed to Van Dyken. Further, Van Dyken signed the application, attesting that the statements within were accurate.

The providers now appeal the court's summary disposition ruling.

## II. LEGAL PRINCIPLES

We review de novo a trial court's decision on a motion for summary disposition. *Richardson v Allstate Ins Co*, 328 Mich App 468, 471; 938 NW2d 749 (2019).

> A motion under MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Zaher v Miotke*, 300 Mich App 132, 139-140; 832 NW2d 266 (2013) (quotation marks and citations omitted).

This Court recently held that "to justify rescission of PIP coverage with respect to preprocurement misrepresentations, the insurer must be able to demonstrate common-law fraud under equitable principles." *Howard v LM Gen Ins Co*, ___ Mich App ___; ___ NW2d ___ (2023) (Docket No. 357110), slip op at 4 (emphasis omitted). This means the insurer must show that:

> (1) the alleged fraudulent party made a material representation; (2) the representation was false; (3) the person making the representation knew it was false or acted recklessly in making the statement; (4) the person intended that the opposing party should act upon the representation; (5) the opposing party acted in reliance; and so (6) suffered injury. [*Id.*, citing *Titan Ins Co v Hyten*, 491 Mich 547, 567-568; 817 NW2d 562 (2012).]

This standard is well established. As described by this Court in another matter:

To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. [*Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017) (quotation marks and citation omitted).]

"[A] material misrepresentation made in an application for no-fault insurance entitles the insurer to rescind the policy." *Lash*, 210 Mich App at 103. "Rescission is justified without regard to the intentional nature of the misrepresentation, as long as it is relied upon by the insurer. Reliance may exist when the misrepresentation relates to the insurer's guidelines for determining eligibility for coverage." *21st Century Premier Ins Co v Zufelt*, 315 Mich App 437, 446; 889 NW2d 759 (2016). Rescission is permitted because "the policy would not have been issued had the material misrepresentation not been made." *Meemic Ins Co v Fortson*, 324 Mich App 467, 476 n 1; 922 NW2d 154 (2018), aff'd in part and vacated in part on other grounds 506 Mich 287; 954 NW2d 115 (2020).

"[A] fact or representation in an application is 'material' where communication of it would have had the effect of substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." *Oade v Jackson Nat'l Life Ins Co of Mich*, 465 Mich 244, 253-254; 632 NW2d 126 (2001) (quotation marks and citation omitted). This Court has described, "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Shelton*, 318 Mich App at 657. As stated in *Keys v Pace*, 358 Mich 74, 82; 99 NW2d 547 (1959), quoting 29 Am Jur, Insurance, § 525:

"The generally accepted test for determining the materiality of a fact or matter as to which a representation is made to the insurer by an applicant for insurance is to be found in the answer to the question whether reasonably careful and intelligent underwriters would have regarded the fact or matter, communicated at the time of effecting the insurance, as substantially increasing the chances of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium." [Emphasis omitted.]

## III. ANALYSIS

The evidence establishes that Van Dyken pleaded guilty in 2015 to receiving and concealing a stolen motor vehicle in violation of MCL 750.535(7) and that he omitted this conviction on his insurance application. The application asked, "Anyone arrested or convicted for other than traffic violation in the last 5 years?" Van Dyken signed and submitted the application

without answering this question.[3] When Wolverine asked for clarification, Terpstra responded on Van Dyken's behalf that the answer was "no."

Van Dyken also was aware of the falsity of his answer. Question 7 clearly asked whether the applicant had been convicted of an offense other than a traffic violation in the preceding five years. Van Dyken had pleaded guilty to receiving and concealing stolen property only two years earlier. Van Dyken certainly was aware of his own recent criminal history.

Wolverine also established that the misrepresentation was material. Peterson testified that Wolverine would not have issued the insurance policy to Van Dyken had it known about the 2015 conviction because Van Dyken would have been ineligible under Wolverine's underwriting guidelines. However, reliance on the underwriting rules is unnecessary; the language of the contract itself supports the materiality of Van Dyken's misrepresentation.

An insurance company cannot be held liable for a risk it did not assume. *Frankenmuth Mut Ins Co v Masters*, 460 Mich 105, 111; 595 NW2d 832 (1999). The risk assumed must be determined from the contract. In relation to an insurance policy, the contract is composed of the policy application, the declarations page, and the policy itself. *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 8; 792 NW2d 372 (2010). It does not include an insurer's underwriting rules. Wolverine's policy application asked various questions to determine the applicant's eligibility for coverage and to assess risk factors relevant to determining the rate to be charged. By falsely representing that he had not been convicted of any crimes, Van Dyken prevented Wolverine from assessing eligibility and risk. As such, his misrepresentation was material.

From the beginning of this action, the providers' only response in the face of Van Dyken's material misrepresentation has been that Van Dyken's conviction did not involve the "use" of a motor vehicle and therefore would not have been grounds to deny coverage pursuant to Wolverine's underwriting rules. There is no support in caselaw for tethering review of a rescission decision to an insurer's underwriting guidelines. There is no legal support for treating underwriting guidelines as part of an insurance contract. The providers have made no legal argument for extending the law in this manner. A party cannot " 'simply . . . announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position.' " *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998), quoting *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959). This is especially true when raising a novel legal argument. Accordingly, we need not resolve whether a receiving and concealing conviction could be deemed a major violation under Wolverine's underwriting guidelines. We also need not address whether Wolverine's exempt status plays any role in this case.

---

[3] Wolverine argues for the first time on appeal that Van Dyken's failure to answer the question constituted silent fraud. In its complaint, Wolverine relied on Van Dyken's active misrepresentation. As the silent fraud issue was not raised below, we decline to consider it on appeal. See *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2005).

## IV. BALANCING THE EQUITIES

The providers further challenge the circuit court's determination that it was not required to balance the equities before permitting rescission given the absence of any innocent third parties.

In *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018), the Michigan Supreme Court held that "because a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court." (Quotation marks and citations omitted.) "When a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Id*. at 410 (quotation marks and citation omitted). Where two innocent parties have competing interests, the court must balance the equities to determine "which blameless party should assume the loss." *Id*. at 410-411 (quotation marks and citation omitted). *Bazzi*, 502 Mich at 411, more specifically stated in regard to insurance cases: "Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties."

In *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 409; 952 NW2d 586 (2020), this Court determined that the circuit court was required to balance the equities before permitting rescission of an insurance policy as "[t]here [was] no dispute that" the injured party and the insurer were "innocent parties to [the named insured's] representations and omissions on the insurance application." The *Pioneer* Court adopted a nonexhaustive list of factors cited in *Farm Bureau Gen Ins Co of Mich v ACE American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (MARKMAN, J., concurring), to consider when balancing the equities:

> (1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer*, 331 Mich App at 411.]

Unlike in *Pioneer*, *Bazzi*, and other cases decided since *Bazzi*, there is no innocent third party in this case. The contract was entered between an innocent first party (the insurance company) and a named insured who made a fraudulent misrepresentation. Although the providers were not parties to the insurance contract, they are not innocent third parties. Rather, the providers are assignees of the insured and stand in his shoes. See *Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424; 864 NW2d 609 (2014). And as this Court stated in *Lash*, 210 Mich App at 103, "the party responsible for the misstatement would be unjustly enriched if he [or she] were not held accountable for his [or her] misrepresentation."

Even assuming that the circuit court was required to balance the equities to determine whether rescission was appropriate, its failure to do so was essentially harmless. Four out of the

five *Farm Bureau* factors require consideration of an innocent third party's interests. Those factors are irrelevant in this case. And as when any insurance policy is rescinded, the providers in this case do have an alternate source of recovery; they can seek payment from the individual who used their services.

We affirm.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick